IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Urban Brands, Inc., *et al.*,[1] | ) | Case No. 10-13005 (KJC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | Re: Docket No. 34 |

## ORDER (A) ESTABLISHING BIDDING AND AUCTION PROCEDURES RELATED TO THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (B) APPROVING RELATED BID PROTECTIONS; (C) SCHEDULING AN AUCTION AND SALE HEARING; (D) ESTABLISHING CERTAIN NOTICE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND LEASES TO BE ASSIGNED; AND (E) GRANTING CERTAIN RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the Debtors for entry of an order (the "Bidding Procedures Order") (A) establishing bidding and auction procedures (the "Bidding Procedures"), substantially in the form attached hereto as Exhibit 1, in connection with the sale (the "Sale") of substantially all of the Debtors' assets (the "Assets") free and clear of all claims (as defined in section 101(5) of the Bankruptcy Code) and any other interests, liens,

---

[1] The Debtors in these cases, along with the last four digits of the federal tax identification number for each of the Debtors, are Urban Brands, Inc. (3678), 100% Girls Ltd. (4150), 100% Girls of Georgia, Inc. (4159), 100% Girls of New York, Inc. (2149), 100 Percent Girls of New Jersey, Inc. (4167), A.S. Interactive, Inc. (3472), Ashley Stewart Ltd. (4541), Ashley Stewart Apparel Corporation (4049), Ashley Stewart Clothing Company, Inc. (4051), Ashley Stewart Management Co., Inc. (4053), Ashley Stewart Woman Ltd. (4152), ASIL 6, Inc. (3996), ASNJ 10, Inc. (4004), Carraizo Alto Apparel Corporation (4651), Church Street Retail, Inc. (5954), Kid Spot Ltd. (2585), Kidspot of Delaware, Inc. (2596), Kidspot of Illinois, Inc. (2606), Kidspot of Michigan, Inc. (2603), Kidspot of New Jersey, Inc. (2601), Kidspot of Ohio, Inc. (4705), Kidspot of Pennsylvania, Inc. (2599), Kidspot of Texas, Inc. (3809), Large Apparel of Alabama, Inc. (0624), Large Apparel of California, Inc. (2129), Large Apparel of Connecticut, Inc. (5161), Large Apparel of District of Columbia, Inc. (8613), Large Apparel of Florida, Inc. (2209), Large Apparel of Georgia, Inc. (3894), Large Apparel of Illinois, Inc. (4650), Large Apparel of Indiana, Inc. (4055), Large Apparel of Louisiana, Inc. (3790), Large Apparel of Maryland, Inc. (5158), Large Apparel of Michigan, Inc. (9420), Large Apparel of Mississippi, Inc. (5913), Large Apparel of Missouri, Inc. (2135), Large Apparel of New Jersey, Inc. (5157), Large Apparel of New York, Inc. (5956), Large Apparel of North Carolina, Inc. (8611), Large Apparel of Ohio, Inc. (3815), Large Apparel of Pennsylvania, Inc. (4057), Large Apparel of South Carolina, Inc. (2029), Large Apparel of Tennessee, Inc. (3895), Large Apparel of Texas, Inc. (3787), Large Apparel of Virginia, Inc. (2809), Large Apparel of Wisconsin, Inc. (3898), Marianne Ltd. (3940), Marianne USPR, Inc. (2193), Marianne VI, Inc. (2206), Metro Apparel of Kentucky, Inc. (7533), Metro Apparel of Massachusetts, Inc. (1367), The Essence of Body & Soul, Ltd. (4165), Urban Acquisition Corporation of New Jersey, Inc. (2976), Urban Acquisition Corporation of New York, Inc. (4103), and Urban Brands TM Holding Co. (5909). The Debtors' corporate offices are located at 100 Metro Way, Secaucus, New Jersey 07094.

[2] Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Motion or in the Stalking Horse Asset Purchase Agreement, as applicable.

RLF1 3615613v. 3

mortgages, pledges, security interests, rights of first refusal, obligations and encumbrances of any kind whatsoever (collectively, the "Interests"), as more fully described and except to the extent identified in the Stalking Horse Asset Purchase Agreement or the asset purchase agreement of any other Successful Bidder (as defined in the Bidding Procedures), as applicable; (B) approving the proposed bid protections, the break-up fee (the "Break-Up Fee," which is defined in the Stalking Horse Asset Purchase Agreement as the "Termination Fee") and the Overbid Amount (as defined in the Bidding Procedures) (the Break-Up Fee and the Overbid Amount together, the "Bid Protections"), to New Ashley Stewart, LLC (the "Stalking Horse Bidder") in accordance with that certain Asset Purchase Agreement dated September 21, 2010, (the "Stalking Horse Asset Purchase Agreement") for the purchase of the Assets; (C) scheduling an auction (the "Auction") and sale hearing (the "Sale Hearing") for the Sale of the Assets and approving the form and manner of notice thereof; (D) establishing certain notice procedures for determining cure amounts (the "Cure Amounts") for executory contracts (the "Executory Contracts") and unexpired nonresidential real property leases (the "Real Property Leases") that may be assigned (the "Cure Procedures"); and (E) granting certain related relief; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this Motion is a core proceeding pursuant to 28 U.S.C. § 157; and adequate notice of the Motion and opportunity for objection having been given, all objections having been resolved or overruled, as the case may be; and it appearing that no other notice need be given; and after due deliberation and sufficient cause therefore, it is hereby:

FOUND AND DETERMINED THAT:

A. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006. Venue for these cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. Notice of the Motion, including the proposed entry of the Bidding Procedures Order, the Bidding Procedures, the Cure Procedures, and the hearing to consider entry of this Bidding Procedures Order (the "Bidding Procedures Hearing") has been provided as set forth in the Motion. The Debtors' notice of the Motion, the proposed entry of the Bidding Procedures Order, the Bidding Procedures, the Cure Procedures, and Bidding Procedures Hearing is appropriate and reasonably calculated to provide all interested parties with timely and proper notice under Bankruptcy Rules 2002, 4001, 6004 and 6006, and no other or further notice of, or hearing on, the Motion or this Bidding Procedures Order is required.

C. The Debtors' proposed notices of (i) the proposed Sale of the Assets, (ii) the assumption and assignment of Executory Contracts and Real Property Leases, (iii) the Stalking Horse Asset Purchase Agreement, (iv) the Cure Procedures, and (v) the Bidding Procedures are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of each, and no further notice of, or hearing on, each is necessary or required.

D. The Bidding Procedures and the Cure Procedures substantially in the form set forth in the Motion are fair, reasonable, and appropriate and are designed to maximize the value of the Debtors' estates.

3

E. The Debtors have demonstrated a compelling and sound business justification for approving the payment of the Break-Up Fee under the circumstances and timing set forth in the Motion and Stalking Horse Asset Purchase Agreement.

F. The Debtors' granting of Bid Protections to the Stalking Horse Bidder is (a) an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, (b) of substantial benefit to the Debtors' estates, (c) fair, reasonable and appropriate, in light of, among other things, (i) the size and nature of the proposed Sale of the Assets, (ii) the substantial efforts that have been expended by the Stalking Horse Bidder, and (iii) the benefits the Stalking Horse Bidder has provided to the Debtors' estates and creditors and all parties-in-interest herein.

G. The Debtors have (a) articulated good and sufficient reasons to this Court to grant the relief requested in the Motion and the Stalking Horse Asset Purchase Agreement and (b) demonstrated sound business justifications to support such relief.

H. Entry of this Bidding Procedures Order is in the best interests of the Debtors and their respective estates and creditors, and all other parties-in-interest.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED THAT:

1. The (i) Bidding Procedures, including references to the Stalking Horse Asset Purchase Agreement, and (ii) Cure Procedures, are hereby APPROVED, as modified herein, and fully incorporated into this Bidding Procedures Order, and shall apply with respect to the proposed Sale of the Assets and assumption and assignment of Executory Contracts and unexpired Real Property Leases contemplated by the Motion. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

2.      All objections to the relief requested in the Motion with respect to (i) the Bidding Procedures and (ii) the Cure Procedures that have not been withdrawn, waived or settled as announced at the Bidding Procedures Hearing, or resolved by stipulation signed by the Debtors and filed with this Court, are overruled on their merits.

## AUCTION AND BIDDING PROCEDURES

3.      The Debtors are authorized (i) to conduct the Auction with respect to all or some of the Assets. The Auction, if any, shall be conducted at Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (the "Auction Site") at 10:00 a.m. (prevailing Eastern time) on October 25, 2010 (the "Auction Date"), or at such other place and time or later date as determined by the Debtors. The Debtors shall notify all Qualified Bidders who have submitted Qualified Bids and expressed their intent to participate in the Auction as set forth in the Bidding Procedures. The Debtors are authorized, subject to the terms of this Bidding Procedures Order, to take all actions necessary, in the discretion of the Debtors, to conduct and implement such Auction.

4.      The Debtors, in consultation with Bank of America, N.A. (the "Lender") and the Official Committee of Unsecured Creditors (the "Committee") may (i) select, in their business judgment, pursuant to the Bidding Procedures the highest or otherwise best offer(s) and the Successful Bidder or Bidders, and (ii) reject any bid that, in the Debtors' business judgment, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules or the Bidding Procedures, or (c) contrary to the best interests of the Debtors and their estates, creditors, interest holders or parties-in-interest.

5.      The failure to specifically include or reference any particular provision, section or article of the Bidding Procedures in this Bidding Procedures Order shall not diminish

or impair the effectiveness of such procedures, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety.

6. The Stalking Horse Bidder is deemed a Qualified Bidder, and the Stalking Horse Bidder's bid for the Assets is deemed a Qualified Bid. In the event there are no other Qualifying Bids, the Debtors shall accept the Stalking Horse Bid and the Stalking Horse shall be the Successful Bidder.

## **THE BIDDING PROTECTIONS**

7. The Bid Protections set forth in the Bidding Procedures including the Break-Up Fee and the minimum overbid are a reasonable inducement for the Stalking Horse Bidder's offer to purchase the Assets on the terms set forth in the Stalking Horse Asset Purchase Agreement and compensation for the risks and lost opportunity costs incurred by the Stalking Horse Bidder.

8. The payment to the Stalking Horse Bidder of the Break-Up Fee (i) is an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code, (ii) is of substantial benefit to the Debtors' estates, (iii) is reasonable and appropriate, including in light of the size and nature of the proposed Sale of the Assets and the efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the proposed Sale is subject to higher or better offers for the Assets, (iv) was negotiated on an arm's-length basis and in good faith, and (v) is necessary to ensure that Stalking Horse Bidder will continue to be bound to the offer contained in the Stalking Horse Asset Purchase Agreement.

9. Pursuant to sections 105, 363, 364, 503, 506 and 507 of the Bankruptcy Code, the Debtors are hereby authorized to pay, without further order of this Court, the Break-Up

Fee pursuant to the terms and conditions set forth in the Stalking Horse Asset Purchase Agreement and the Bidding Procedures.

10. The Break-Up Fee is hereby approved and shall be paid to the Stalking Horse Bidder as set forth in Section 7.11 of the Stalking Horse Asset Purchase Agreement.

11. The Break-Up Fee shall be the sole remedy of the Stalking Horse Bidder if the Stalking Horse Asset Purchase Agreement is terminated under circumstances where the Break-Up Fee is payable.

12. The Bid Protections provide that the $150,000 of expense reimbursement provided to the Stalking Horse Bidder pre-petition be unavoidable by further Order of this Court.

## ADDITIONAL NOTICE PROVISIONS

13. Within two (2) days after the entry of this Bidding Procedures Order (the "Mailing Date") or as soon thereafter as practicable, the Debtors (or their agents) shall serve the Sale Notice and a copy of this Bidding Procedures Order by first-class mail, postage prepaid, upon (a) the United States Trustee for the District of Delaware; (b) counsel to the Lender; (c) counsel for the indenture trustee for the 10.38% senior notes due 2010; (d) the creditors listed on the Debtors' consolidated list of 20 largest unsecured creditors, as filed with the chapter 11 petitions; (e) counsel to the Stalking Horse Bidder; (f) all parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors; (g) each of the Debtors' landlords and each of the notice parties identified in the real property leases, to the extent possible; (h) the National Association of Attorneys General; (i) the State Attorney General's offices (upon (1) Chief or Director of the Consumer Protection Division or Bureau; and (2) Chief or Director of the Bankruptcy Division or Bureau) and State Consumer Protection Agency for each State where a store or distribution center is located; (j) various federal, state, county and

city tax and regulatory authorities; (k) all entities known to have expressed an interest in a transaction with respect to the Assets or that has been indentified by the Debtors or their advisors as a potential purchaser of the Assets; and (l) all parties requesting notice pursuant to Bankruptcy Rule 2002.

14. On the Mailing Date or as soon as practicable thereafter, the Debtors shall publish the Sale Notice once in <u>The New York Times</u>, and such publication notice shall be deemed proper notice to any other interested parties whose identities are unknown to the Debtors.

## **CURE PROCEDURES**

15. The Cure Procedures are approved.

16. On September 29, 2010 (and as amended on September 30, 2010), the Debtors filed a notice identifying all Executory Contracts and Real Property Leases that may be assumed and assigned in connection with the Sale (the "<u>Cure Notice</u>"), in the form attached hereto as <u>Exhibit 2</u>, with this Court and served the Cure Notice on all non-debtor parties to any Executory Contracts and Real Property Leases (the "<u>Contract Notice Parties</u>") that may be assumed by the Debtors and assigned to the Successful Bidder; *provided, however,* that the presence of an Executory Contract or Real Property Lease listed on <u>Exhibit 2</u> does not constitute an admission that such Executory Contract or Real Property Lease is an executory contract or unexpired lease. The Debtors reserve all of their rights, claims and causes of action with respect to the Executory Contracts and Real Property Leases listed on <u>Exhibit 2</u>.

17. The Cure Notice stated the Cure Amounts that the Debtors believe are necessary to assume such Executory Contracts and Real Property Leases pursuant to section 365 of the Bankruptcy Code and notified the non-debtor party that such party's Executory Contract

8

or Real Property Lease may be assumed and assigned to a purchaser of the Assets to be identified at the conclusion of the Auction. In addition, the Cure Notice provided the non-debtor party to an Executory Contract or Real Property Lease with the Stalking Horse Adequate Assurance Information. The Stalking Horse Bidder shall file with the Court a supplemental disclosure providing additional adequate assurance information and serve such disclosure on any counterparties to the Executory Contracts and Unexpired Leases on or before October 12, 2010. The Cure Notice also provided that objections to any Cure Amount will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors. The Cure Objection Deadline and the notice procedures set forth in this paragraph 17 are hereby approved.

18. Pursuant to the Bidding Procedures, Potential Bidders (as defined in the Bidding Procedures) shall be required to include evidence of adequate assurance of future performance (the "Adequate Assurance Information") as part of their Required Bid Materials, as well as a contact person (with relevant contact information) that counterparties to an Executory Contract or Real Property Lease can contact to obtain additional Adequate Assurance Information. The Debtors shall email or fax, provided they have relevant contact information, the Adequate Assurance Information to all counterparties to the Executory Contracts and Real Property Leases within 24 hours of receipt and no later than October 22, 2010. The rights of any counterparty to the Executory Contracts or Real Property Leases to object at the Sale Hearing as to the adequacy of the Adequate Assurance Information provided, and therefore whether the proposed assumption and assignment of the underlying Executory Contract or Real Property Lease should be considered at the Sale Hearing, are hereby preserved.

19. All objections by non-debtor parties to the Cure Amount ~~or the Stalking Horse Adequate Assurance Information~~, must be filed on or before October 19, 2010 at 4:00

p.m. (prevailing Eastern Time) (the "Cure Objection Deadline") and served on (i) the Debtors' counsel by mail Richards Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, (Attn: Mark D. Collins, Esq. and Michael J. Merchant, Esq.), and by facsimile, (302) 571-1253, (ii) the Debtors by mail, Urban Brands, Inc., 100 Metro Way, Secaucus, NJ 07094-1906 (Attn: Laura Weil), and by facsimile, (201) 319-9582; and (iii) counsel to the Stalking Horse Bidder, Curtis, Mallet-Prevost, Colt & Mosle LLP, 101 Park Avenue, New York, NY 10178 (Attn: Steven J. Reisman, Esq. and Timothy A. Barnes, Esq.), and by facsimile, (212) 697-1559 (the "Cure Objection Notice Parties"). In the event that the Successful Bidder is not the Stalking Horse Bidder, objections regarding adequate assurance of future performance may be raised at the Sale Hearing

20. The Debtors may amend the Cure Notice with respect to any Cure Amount. If the Debtors amend the Cure Notice, any non-debtor parties affected by the amendment must file any objection to the amended Cure Amount within fourteen (14) days after service of the amended Cure Notice and serve such objection on the Cure Object Notice Parties.

21. Unless a non-debtor party to any Executory Contract or Real Property Lease files an objection to the Cure Amount by the Cure Objection Deadline, then such counterparty shall be (i) forever barred from objecting to the Cure Amount; and (ii) forever barred and estopped from asserting or claiming any Cure Amount against the Debtors, any Successful Bidder or any other assignee of the relevant Executory Contract or Real Property Lease; provided, however, that nothing herein shall in any way alter the rights of any claimant to submit a proof of claim solely with respect to any prepetition non-priority claims in accordance with any bar date established in these cases.

22. Notwithstanding anything to the contrary set forth herein, in the Motion, or in the asset purchase agreement that the Debtors ultimately enter into, with respect to each Real Property Lease that is assigned to the Successful Bidder, entry of this Order shall not impair the right of any non-Debtor counterparty to a Real Property Lease to claim, and the Successful Bidder will assume to the extent applicable under the Real Property Lease, (i) any amounts due as year-end adjustment and/or reconciliation charges without regard to whether those amounts accrued prior to or after the effective date of the assignment, (ii) amounts billed in the ordinary course of business under the terms of the respective Real Property Lease, or (iii) the Debtors' obligation, if any, to indemnify a non-Debtor counterparty to a Real Property Lease for pre-assignment claims of third parties pursuant to the terms of the respective Real Property Lease; provided, however, that the Successful Bidder shall have whatever rights that the Debtors may have had to contest the amounts asserted by the non-Debtor counterparty to a Real Property Lease under the terms of the Real Property Lease.

23. All timely filed objections to any Cure Amount must set forth (i) the basis for the objection, (ii) the exact amount the party asserts as the Cure Amount, and (iii) sufficient documentation to support the Cure Amount alleged.

24. Hearings on objections to any Cure Amount may be held at the Sale Hearing or upon such other date as this Court may designate upon request by Debtors with prior consent of the Successful Bidder.

25. As soon as possible after the Closing Date, the Debtors shall file with this Court a post-closing notice that identifies the Executory Contracts and Real Property Leases which were assumed and assigned to the Successful Bidder as of the Closing Date.

## ADDITIONAL PROVISIONS

26. The Debtors are authorized and empowered to take such actions as may be necessary to implement and effect the terms and requirements established under this Bidding Procedures Order.

27. A Sale Hearing to approve the sale of substantially all of the Assets to any Successful Bidder and authorizing the assumption and assignment of certain executory contracts and unexpired leases shall be held on October 27, 2010 at 11:00 a.m. (prevailing Eastern Time), unless otherwise continued upon request by the Debtors.

28. Objections, if any, to any Sale [including objections to the Stalking Horse Adequate Assurance Information] must be filed by October 21, 2010 at 4:00 p.m. (prevailing Eastern Time) (the "<u>Sale Objection Deadline</u>") and served on (i) the Debtors' counsel by mail Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, (Attn: Mark D. Collins, Esq. and Michael J. Merchant, Esq.), and by facsimile, (302) 651-7701; (ii) the Debtors by mail, Urban Brands, Inc., 100 Metro Way, Secaucus, NJ 07094-1906 (Attn: Laura Weil), and by facsimile, (201) 319-9582; (iii) the counsel for the Official Committee of Unsecured Creditors by mail Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036 (Attn: Lawrence C. Gottlieb, Esq. and Cathy Hershcopf, Esq.) and by facsimile at (212) 479-6275; and (iv) the counsel to the Stalking Horse Bidder, Curtis, Mallet-Prevost, Colt & Mosle LLP, 101 Park Avenue, New York, New York 10178, (Attn: Steven J. Reisman, Esq. and Timothy A. Barnes, Esq.).

29. This Bidding Procedures Order shall be binding on and inure to the benefit of the Stalking Horse Bidder and its affiliates, successors and assigns, and the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

12

RLF1 3615613v.3

30. This Bidding Procedures Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

31. To the extent this Bidding Procedures Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Bidding Procedures Order shall govern.

32. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or otherwise, this Court, for good cause shown, orders that the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

33. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Bidding Procedures Order, including, but not limited to, any matter, claim or dispute arising from or relating to the Break-Up Fee, the Stalking Horse Asset Purchase Agreement, the Bidding Procedures and the implementation of this Bidding Procedures Order.

Dated: October 4, 2010
Wilmington, Delaware

THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE