

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **Urban Brands, Inc., et al.,**[1] | ) | **Case No. 10-13005 (KJC)** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |
| | ) | |
| | ) | **Re: Docket Nos. 16 & 51** |

**FINAL ORDER PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363
AND 364, RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE AND LOCAL BANKRUPTCY RULES 2002-1
AND 4001-2 (1) AUTHORIZING INCURRENCE BY THE DEBTORS OF
POST-PETITION SECURED INDEBTEDNESS WITH PRIORITY OVER
ALL OVER SECURED INDEBTEDNESS AND WITH ADMINISTRATIVE
SUPERPRIORITY, (2) GRANTING LIENS, (3) AUTHORIZING USE OF CASH
COLLATERAL BY THE DEBTORS AND PROVIDING FOR ADEQUATE
PROTECTION, AND (4) MODIFYING THE AUTOMATIC STAY**

THIS MATTER having come before this Court upon motion (the "**DIP Motion**") by

Urban Brands, Inc. and the other debtors identified in footnote one hereto (collectively, the

---

[1] The Debtors in these cases, along with the last four digits of the federal tax identification number for each of the Debtors, are Urban Brands, Inc. (3678), 100% Girls Ltd. (4150), 100% Girls of Georgia, Inc. (4159), 100% Girls of New York, Inc. (2149), 100 Percent Girls of New Jersey, Inc. (4167), A.S. Interactive, Inc. (3472), Ashley Stewart Ltd. (4541), Ashley Stewart Apparel Corporation (4049), Ashley Stewart Clothing Company, Inc. (4051), Ashley Stewart Management Co., Inc. (4053), Ashley Stewart Woman Ltd. (4152), ASIL 6, Inc. (3996), ASNJ 10, Inc. (4004), Carraizo Alto Apparel Corporation (4651), Church Street Retail, Inc. (5954), Kid Spot Ltd. (2585), Kidspot of Delaware, Inc. (2596), Kidspot of Illinois, Inc. (2606), Kidspot of Michigan, Inc. (2603), Kidspot of New Jersey, Inc. (2601), Kidspot of Ohio, Inc. (4705), Kidspot of Pennsylvania, Inc. (2599), Kidspot of Texas, Inc. (3809), Large Apparel of Alabama, Inc. (0624), Large Apparel of California, Inc. (2129), Large Apparel of Connecticut, Inc. (5161), Large Apparel of District of Columbia, Inc. (8613), Large Apparel of Florida, Inc. (2209), Large Apparel of Georgia, Inc. (3894), Large Apparel of Illinois, Inc. (4650), Large Apparel of Indiana, Inc. (4055), Large Apparel of Louisiana, Inc. (3790), Large Apparel of Maryland, Inc. (5158), Large Apparel of Michigan, Inc. (9420), Large Apparel of Mississippi, Inc. (5913), Large Apparel of Missouri, Inc. (2135), Large Apparel of New Jersey, Inc. (5157), Large Apparel of New York, Inc. (5956), Large Apparel of North Carolina, Inc. (8611), Large Apparel of Ohio, Inc. (3815), Large Apparel of Pennsylvania, Inc. (4057), Large Apparel of South Carolina, Inc. (2029), Large Apparel of Tennessee, Inc. (3895), Large Apparel of Texas, Inc. (3787), Large Apparel of Virginia, Inc. (2809), Large Apparel of Wisconsin, Inc. (3898), Marianne Ltd. (3940), Marianne USPR, Inc. (2193), Marianne VI, Inc. (2206), Metro Apparel of Kentucky, Inc. (7533), Metro Apparel of Massachusetts, Inc. (1367), The Essence of Body & Soul, Ltd. (4165), Urban Acquisition Corporation of New Jersey, Inc. (2976), Urban Acquisition Corporation of New York, Inc. (4103), and Urban Brands TM Holding Co. (5909). The Debtors' corporate offices are located at 100 Metro Way, Secaucus, New Jersey 07094.

"**Debtors**"), as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "**Cases**") seeking, among other things, entry of a final order (this "**Final Order**") authorizing the Debtors to:

(i)     Obtain and incur debt, pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code up to the aggregate committed amount of $6,000,000, on terms and conditions described in the DIP Financing Agreements (as defined below) and this Final Order, secured by first priority, valid, priming, perfected and enforceable liens (as defined in section 101(37) of chapter 11 of title 11 of the United States Code, as amended (the "**Bankruptcy Code**") on property of the Debtors' estates pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, and with priority, as to administrative expenses, as provided in section 364(c)(1) of the Bankruptcy Code, subject to the terms and conditions contained herein;

(ii)    (a) Establish that financing arrangement (the "**DIP Facility**") pursuant to (I) that certain Senior Secured, Super-Priority, Debtor-In-Possession Loan and Security Agreement (the "**DIP Loan Agreement**"), substantially in the form filed of record in the Cases and introduced into evidence at the Final Hearing (as defined below), by and among the Debtors, as borrowers (collectively, the "**Borrower**") and Bank of America, N.A., as lender (together with any successor, the "**DIP Lender**"), and (II) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the DIP Lender, including, without limitation, security agreements, pledge agreements, guaranties, notes, and Uniform Commercial Code ("**UCC**") financing statements (collectively, as may be amended, modified or supplemented and in effect from time to time, the "**DIP Financing Agreements**")[2]; and (b) incur

---

[2] Capitalized terms used in this Final Order but not defined herein shall have the meanings ascribed to such terms in the DIP Financing Agreements.

the "**Liabilities**" under and as defined in the DIP Loan Agreement (collectively, the "**DIP Liabilities**");

      (iii)    Use the proceeds of the DIP Facility (net of any amounts used to pay fees, costs, and expenses under the DIP Financing Agreements) in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements, and in accordance with the Budget (as defined below) solely for (a) working capital and general corporate purposes, (b) payment of costs of administration of the Cases, to the extent set forth in the Budget, (c) payment of the Adequate Protection Payments (as defined below), and (d) upon entry of this Final Order, payment in full of the remaining Pre-Petition Senior Debt (as defined below).

      (iv)    Grant, pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, the DIP Lender first-priority priming, valid, perfected and enforceable liens, subject only to the Carve-Out (as defined below) and the Permitted Prior Liens (as defined below), upon all of the Debtors' real and personal property as provided in and as contemplated by the Interim Order, this Final Order, and the DIP Financing Agreements;

      (v)    Grant, pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Lender superpriority administrative claim status in respect of all DIP Liabilities, subject to the Carve-Out as provided herein;

      (vi)    Use "cash collateral" as such term is defined in Section 363 of the Bankruptcy Code (the "**Cash Collateral**") in which the Pre-Petition Lender (as defined below) has an interest, subject to compliance with the Budget;

      (vii)    Grant the Pre-Petition Lender (as defined below) the Pre-Petition Replacement Liens, the Pre-Petition Superpriority Claim, the Adequate Protection Payments and the Pre-Petition Indemnity Account (each as defined below) as adequate protection for any

decrease in the value of the Pre-Petition Collateral (as defined below) on account of the granting of the DIP Liens (as defined below) to the DIP Lender, subordinating the Pre-Petition Liens (as defined below) to the Carve-Out, the Debtors' use of the Pre-Petition Collateral, including Cash Collateral, or the imposition of the automatic stay;

(viii)   Request this Court to vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Agreements and this Final Order; and

(x)   Request this Court to waive any applicable stay (including under Federal Rule of Bankruptcy Procedure 6004(h)) and provide for the immediate effectiveness of this Final Order.

The Court having considered the DIP Motion, the Declaration of Michael A. Abate, Vice President Finance/Treasurer of the Debtors, in support of the Debtors' first-day motions and orders, the exhibits attached thereto, the DIP Financing Agreements, and the evidence submitted at the hearing on the DIP Motion on September 22, 2010 (the "**Interim Hearing**"); and following the Interim Hearing the Court having entered an interim order authorizing the use of cash collateral and the incurrence of debt in limited amounts (the "**Interim Order**") [Docket No. ___]; and whereas the Court having held a final hearing on October 13, 2010 to further consider the relief requested in the DIP Motion (the "**Final Hearing**"); and due and proper notice of the DIP Motion, the Interim Hearing and the Final Hearing having been given; and it appearing that approval of the relief requested in the DIP Motion, on a final basis, is necessary, appropriate and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and their equity holders, and is essential for the continued operation of the Debtors' business; and all objections, if any, to the entry of this Final Order having been withdrawn,

4

resolved, or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED BY THE DEBTORS AT THE INTERIM HEARING AND FINAL HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A. **Petition Date**. On September 21, 2010 (the "**Petition Date**"), the Debtors each filed voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware. The Debtors have continued in the management and operation of their business and property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Cases.

B. **Jurisdiction and Venue**. This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C. **Committee Formation**. A statutory committee of unsecured creditors (together with any other statutory committee appointed in these Cases, the "**Committee**") was appointed in the Cases on October 1, 2010, has proposed to retain Cooley LLP as its lead counsel and Ballard Spahr LLP as its local counsel, and the Committee was represented by counsel at the Final Hearing.

D. **Notice**. The Final Hearing was held pursuant to the authorization of Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Del. Bankr. L.R. 4001-2. Notice of the relief requested in the DIP Motion, the entry of the Interim Order, the proposed terms of this Final Order, and the Final Hearing has been provided by the Debtors,

whether by telecopy, email, overnight courier or hand delivery on or before September 24, 2010, to certain parties in interest, including: (i) the Office of the United States Trustee, (ii) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis, (iii) counsel to the Committee, and (iv) counsel to the proposed DIP Lender and the proposed DIP Lender. Such notice of the Final Hearing and the relief requested in the DIP Motion has been given pursuant to sections 102(1), 364(c) and 364(d) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), 4001(d) and the local rules of the Court.

E. **Debtors' Acknowledgements and Agreements**. Without prejudice to the rights of parties in interest as set forth in paragraph 7 below, the Debtors admit, stipulate, acknowledge, and agree that (collectively, paragraphs E (i) through E (x) hereof shall be referred to herein as the "**Debtors' Stipulations**"):

**(i)** **Pre-Petition Financing Agreement**. Prior to the commencement of the Cases, the Debtors were party to that certain Credit Agreement, dated as of September 3, 2004 by and among the Borrowers and Bank of America, N.A., as lender (together with any successor, the "**Pre-Petition Lender**"), and (B) all other agreements, documents, security agreements, guaranties, and instruments executed and/or delivered with, to, or in favor of the Pre-Petition Lender, including, without limitation, notes, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as may be amended, modified or supplemented and in effect from time to time, collectively, the "**Pre-Petition Financing Agreements**").

**(ii)** **Pre-Petition Debt Amount**. As of the Petition Date, the Debtors were joint and severally indebted under the Pre-Petition Financing Agreements in the approximate principal amount of $2,249,816.84, plus letters of credit in the approximate stated amount of $2,366,323.50, plus interest accrued and accruing, costs, expenses, fees (including attorneys' fees and legal expenses), other charges and other obligations, including, without limitation, on account of cash management, credit card, depository, investment, hedging, and other banking or financial services (collectively the "**Pre-Petition Senior Debt**"); The Debtors admit, acknowledge, stipulate and agree that the Debtors are in default of their debts and obligations under the Pre-Petition Financing Agreements.

**(iii)** **Pre-Petition Collateral**. To secure the Pre-Petition Senior Debt, the Debtors granted security interests and liens (the "**Pre-Petition Senior Liens**") to

the Pre-Petition Lender upon substantially all of the Debtors' personal property, including, without limitation, Accounts; Deposit Accounts; Equipment; General Intangibles; Goods; Inventory; Investment Property; Commercial Tort Claims, and the proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all of the Collateral (each as defined in the Pre-Petition Financing Agreements and/or the Uniform Commercial Code) (collectively, the "**Pre-Petition Collateral**"), with priority over all other liens except any liens that are valid, properly perfected, unavoidable, and senior to the Pre-Petition First Liens, they are referred to herein as the "**Permitted Prior Liens**").

**(iv)** **Pre-Petition Liens.** (a) As of the Petition Date, each of the Debtors believes that (i) the Pre-Petition Senior Liens are valid, binding, enforceable, and perfected first-priority liens, subject only to any Permitted Prior Liens, (ii) the Pre-Petition Senior Debt constitutes legal, valid and binding obligations of each of the Debtors, enforceable in accordance with the terms of the Pre-Petition Financing Agreements (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and no offsets, defenses or counterclaims to any of the Pre-Petition Senior Debt exists, (iii) the Pre-Petition Liens and the Pre-Petition Senior Debt are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iv) the Pre-Petition Senior Debt constitutes allowed secured claims, and (b) on the date that this Final Order is entered and by virtue of the entry of this Final Order, each Debtor has waived, discharged and released the Pre-Petition Lender, together with its affiliates, agents, attorneys, officers, directors and employees, of any right any Debtor may have (x) to challenge or object to any of the Pre-Petition Senior Debt, (y) to challenge or object to the security for the Pre-Petition Senior Debt, and (z) to bring or pursue any and all claims, objections, challenges, causes of action and/or choses in action arising out of, based upon or related to the Pre-Petition Liens, the Pre-Petition Senior Debt, the Pre-Petition Financing Agreements or otherwise.

The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Financing Agreements, the Pre-Petition Senior Debt or the Pre-Petition Liens, or any claim of the Pre-Petition Lender pursuant to the Pre-Petition Financing Agreements.

**(v)** **Cash Collateral.** The Pre-Petition Lender has security interests in Cash Collateral, including all amounts on deposit in the Debtors' banking, checking, or other deposit accounts and all proceeds of Pre-Petition Collateral, to secure the Pre-Petition Senior Debt to the same extent and order of priority as that which existed pre-petition.

**(vi)** **Priming of DIP Liens or Further Priming of Pre-Petition Liens**. In entering into the DIP Financing Agreements, and as consideration therefor, the Debtors hereby agree that until such time as (A) all DIP Liabilities and all

remaining Pre-Petition Senior Debt have been irrevocably paid in full in cash, (B) all commitments to lend have terminated, (C) all letters of credit and banker's acceptances have been secured as required by the DIP Loan Agreement, (D) all indemnity, cash management, and bank product obligations under the DIP Financing Agreements have been cash collateralized in a manner satisfactory to the DIP Lender, and (E) the Pre-Petition Indemnity Account has been established (collectively, (A), (B), (C), (D) and (E) constitute the **"Full Payment of Senior Obligations"**), the Debtors shall not in any way prime or seek to prime the security interests and DIP Liens provided to the DIP Lender under this Final Order, or further prime the Pre-Petition Liens beyond what is authorized in this Final Order, by offering a subsequent lender or a party in interest a superior or pari passu lien or claim pursuant to Section 364(d) of the Bankruptcy Code or otherwise.

F.    **Findings Regarding the Post-Petition Financing**.

(i)    **Need for Post-Petition Financing and Use of Cash Collateral**.    An immediate need exists for the Debtors to obtain funds from the DIP Facility and have the use of Cash Collateral in order to continue operations and to administer and preserve the value of their estates. Immediate and irreparable loss or damage will be caused to the Debtors' estates if immediate financing is not obtained and permission to use Cash Collateral is not granted. The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets and maximize a return for all creditors requires the availability of working capital from the DIP Facility and permission to use Cash Collateral, the absence of which would immediately and irreparably harm the Debtors, their estates, their creditors and equity holders and the possibility for a successful reorganization or sale of the Debtors' assets as a going concern or otherwise.

(ii)    **No Credit Available on More Favorable Terms**.    The Debtors have been unable to obtain (A) unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense, (B) credit for money borrowed with priority over any or all administrative expenses of the kind specified in Bankruptcy Code Sections 503(b) or 507(b), (C) credit for money borrowed secured solely by a lien on property of the estate that is not otherwise

8

subject to a lien, or (D) credit for money borrowed secured by a junior lien on property of the estate which is subject to a lien, in each case, on more favorable terms and conditions than those provided in the DIP Loan Agreement and this Final Order. The Debtors are unable to obtain credit for borrowed money without granting to the DIP Lender the DIP Protections (as defined below).

(iii) **Pre-Petition Liens**. Nothing herein shall constitute a finding or ruling by this Court that any Pre-Petition Lien is valid, senior, perfected or unavoidable. Moreover, subject to paragraph 7 of this Final Order, nothing shall prejudice the rights of the Committee to challenge the validity, priority, perfection or extent of the Pre-Petition Liens as set forth in this Final Order.

(iv) **Permitted Prior Liens**. Nothing herein shall constitute a finding or ruling by this Court that any Permitted Prior Lien is valid, senior, perfected or unavoidable. Moreover, nothing shall prejudice the rights of any party in interest, including but not limited to the Debtors, the DIP Lender, the Pre-Petition Lender, and the Committee, to challenge the validity, priority, perfection or extent of any such Permitted Prior.

G. **Section 506(c) Waiver**. As a further condition of the DIP Facility and any obligation of the DIP Lender to make credit extensions pursuant to the DIP Financing Agreements and as a condition of this Final Order and the right to use Cash Collateral as permitted herein, the Debtors (and any successors thereto or any representatives thereof, including any trustees appointed in the Cases or any Successor Cases (as defined below), shall be deemed to have waived any rights or benefits of Section 506(c) of the Bankruptcy Code in connection with the DIP Liens and the Pre-Petition Liens.

9

H.     **Use of Proceeds of the DIP Facility**.  Proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Financing Agreements) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Loan Agreement, and in accordance with the Budget, as follows: (a) solely for (i) working capital and general corporate purposes, (ii) payment of costs of administration of the Cases, to the extent set forth in the Budget and the Carve-Out, and (iii) payment of the Adequate Protection Payments, and (b) all letters of credit issued and all obligations on account of cash management services and bank products incurred under the Pre-Petition Financing Agreements shall be deemed issued and incurred under the DIP Financing Agreements and deemed to constitute "Obligations" thereunder, and (c) payment in full of the remaining Pre-Petition Senior Debt.  Payment of the Pre-Petition Senior Debt in accordance with this Final Order is necessary as the Pre-Petition Lender will not otherwise consent to the priming of the Pre-Petition Liens.  Such payment will not prejudice the Debtors or their estates, because payment of such amounts is subject to the rights of parties in interest under paragraph 7 below, and whatever remedy the Court may order, including but not limited to, disgorgement of any Pre-Petition Senior Debt that has been repaid.

I.     **Application of Proceeds of DIP Collateral**.  All proceeds of the sale or other disposition of the DIP Collateral (as defined below) shall be applied: (a) first, to reduce the Pre-Petition Senior Debt until the Full Payment of Senior Obligations in respect of such Pre-Petition Senior Debt, (b) second, to fund the Carve-Out, and (c) third, to reduce the DIP Liabilities until the Full Payment of Senior Obligations in respect of such DIP Liabilities.

J.     **Adequate Protection for Pre-Petition Lender**.  Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code, the Pre-Petition Lender is entitled to receive adequate protection for any decrease in the value of its interest in the Pre-Petition Collateral (including

10

Cash Collateral) on account of the grant of the DIP Liens, the subordination of the Pre-Petition Liens to the Carve-Out, the Debtors' use, sale, or lease of the Pre-Petition Collateral (including Cash Collateral) during these Cases, and the imposition of the automatic stay (in each case, a **"Diminution in Value"**). As adequate protection for any Diminution in Value, the Pre-Petition Lender will receive: (1) the Pre-Petition Replacement Liens, (2) the Pre-Petition Superpriority Claim, (3) the Adequate Protection Payments, and (4) the Pre-Petition Indemnity Account.

K. **Section 552**. In light of their agreement to subordinate their liens and superpriority claims (i) to the Carve-Out in the case of the DIP Lender, and (ii) to the Carve-Out and the DIP Liens in the case of the Pre-Petition Lender, the DIP Lender and the Pre-Petition Lender are each entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply, except that with respect to the Pre-Petition Lender, this finding is subject to rights of parties in interest under paragraph 7 below.

L. **Extension of Financing; Consent to Use of Cash Collateral**. In accordance with the Interim Order and in reliance therein, the DIP Lender has provided financing to the Debtors pursuant to the terms of the DIP Financing Agreements. The DIP Lender has indicated a willingness to continue to provide financing to the Debtors in accordance with the DIP Financing Agreements and subject to (i) the entry of this Final Order, and (ii) findings by the Court that such financing is essential to the Debtors' estate, that the DIP Lender is a good faith financier, and that the DIP Lender's claims, superpriority claims, security interests and liens and other protections granted pursuant to the Interim Order, this Final Order and the DIP Financing Agreements will not be affected by any subsequent reversal, modification, vacatur or amendment of the Interim Order or this Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

11

M.  **Business Judgment and Good Faith Pursuant to Section 364(e)**.  The terms and conditions of the DIP Financing Agreement, and the fees paid and to be paid thereunder are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration; (ii) the DIP Financing Agreements were negotiated in good faith and at arms' length between the Debtors and the DIP Lender, and (iii) use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Lender is entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.  Similarly, in consideration of the consent to use Cash Collateral granted by the Pre-Petition Lender, the Pre-Petition Lender's claims, superpriority claims, security interests and liens and other protections granted pursuant to the Interim Order and this Final Order will not be affected by any subsequent reversal, modification, vacatur or amendment of the Interim Order or this Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

N.  **Relief Essential; Best Interest**.  The relief requested in the DIP Motion is necessary, essential, and appropriate for the continued operation of the Debtors' business and the management and preservation of the Debtors' assets and personal property. It is in the best interest of Debtors' estates to be allowed to establish the DIP Facility contemplated by the DIP Loan Agreement.

O.  **Entry of Final Order**.  For the reasons stated above, the Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE**, on the DIP Motion of the Debtors and the record before this Court with respect to the DIP Motion, and with the consent of the Debtors, the Pre-Petition

12

Lender, the DIP Lender, and the Committee to the form and entry of this Final Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1. **Motion Granted**. The DIP Motion is granted in accordance with the terms and conditions set forth in this Final Order.

2. **DIP Financing Agreements**.

(a) **Approval of Entry Into DIP Financing Agreements**. The terms of the Interim Order are hereby ratified and confirmed, except those terms (if any) modified by this Final Order, and all borrowings and payments made thereunder are ratified and confirmed on a final basis and shall be deemed made in accordance with and pursuant to this Final Order. All actions taken by the Debtors pursuant to the Interim Order are hereby ratified and confirmed. The DIP Financing Agreements are hereby approved on a final basis. The Debtors are expressly and immediately authorized, empowered and directed to execute and deliver the DIP Financing Agreements and to incur and to perform the DIP Liabilities in accordance with, and subject to, the terms of this Final Order and the DIP Financing Agreements and to execute and deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by the Interim Order, this Final Order and the DIP Financing Agreements. The Debtors are hereby authorized and directed to do and perform all acts, pay the principal, interest, fees, expenses, and other amounts described in the DIP Financing Agreements and this Final Order, as applicable, as such become due, including, without limitation, closing fees, administrative fees, commitment fees, letter of credit fees and reasonable attorneys',

financial advisors' and accountants' fees and disbursements as provided for in the DIP Financing Agreements and this Final Order, which amounts shall not otherwise be subject to approval of this Court; however, the DIP Lender shall provide to the U.S. Trustee and counsel to the Committee, on a monthly basis, the total amount of professional fees and expenses incurred per calendar month in the Cases, and upon request, the DIP Lender shall provide the invoices relating to such fees and expenses, redacted as necessary to remove any privileged or otherwise confidential information, with such invoices subject to objection as to reasonableness, with any unresolved objection to be resolved by the Court.

(b)     **Authorization to Borrow**. In order to enable them to continue to operate their business, subject to the terms and conditions of this Final Order, the DIP Loan Agreement, the other DIP Financing Agreements, and the Budget, the Debtors are hereby authorized under the DIP Facility to borrow up to a total committed amount of $6,000,000 (including the issuance of letters of credit and any amounts borrowed pursuant to the Interim Order).

(c)     **Application of DIP Proceeds**. The proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Loan Agreement) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements, and in accordance with the Budget, as follows: (a) solely for (i) working capital and general corporate purposes, (ii) payment of costs of administration of the Cases, to the extent set forth in the Budget and the Carve-Out, and (iii) payment of the Adequate Protection Payments, (b) all letters of credit issued and all obligations on account of cash management services and bank products incurred under the Pre-Petition Financing Agreements shall be deemed issued and incurred under the DIP Financing Agreements and deemed to constitute "Liabilities" thereunder, and (c) payment in full of the remaining Pre-Petition Senior Debt.

14

(d)  **Conditions Precedent**. The DIP Lender shall have no obligation to make any loan or advance under the DIP Loan Agreement unless the conditions precedent to making such loan under the DIP Loan Agreement have been satisfied in full or waived in accordance with the DIP Loan Agreement.

(e)  **Post-Petition Liens**. Effective immediately upon the entry of the Interim Order, the DIP Lender was granted (which grant is hereby ratified, confirmed and approved on a final basis), and upon entry of this Final Order, the DIP Lender is granted pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, priming first-priority, continuing, valid, binding, enforceable, non-avoidable and automatically perfected postpetition security interests and liens (collectively, the "**DIP Liens**"), senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates except as otherwise provided in this Final Order, upon and to all presently owned and hereafter acquired assets and real and personal property of the Debtors, including, without limitation, the following:

(a)  Accounts;

(b)  Equipment;

(c)  General Intangibles, including, without limitation, Payment Intangibles and Intellectual Property;

(d)  Inventory;

(e)  Commercial Tort Claims;

(f)  Deposit Accounts;

(g)  Fixtures;

(h)  (o)  The proceeds of all interests in any Real Property, including, without limitation, proceeds of all Leasehold Interests, but not the leases themselves;

(i)  Goods;

(j)  Supporting Obligations and Letter of Credit Rights;

(k)  Documents (including, if applicable, electronic documents);

(l)  Chattel Paper;

15

(m) Instruments;

(n) Investment Property including, without limitation, all ownership or membership interests in any subsidiaries or affiliates (whether or not controlled by the Debtors);

(o) subject to the proviso below, the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code

(p) any recoveries under Section 506(c) of the Bankruptcy Code (other than any such recoveries from the DIP Collateral) to the extent the amounts recovered have been funded with proceeds of the DIP Facility;

(q) any money, policies and certificates of insurance, deposits, cash or other assets;

(r) all of Debtors' books, records and information relating to any of the foregoing ((a) through (r)) and/or to the operation of any Debtors' business, and all rights of access to such Debtors' books, records and information and all property in which such Debtors' books, records and information are stored, recorded and maintained;

(s) all insurance proceeds, refunds, and premium rebates, including, without limitation, proceeds of fire and credit insurance, whether any of such proceeds, refunds, and premium rebates arise out of any of the foregoing ((a) through (s)) or otherwise;

(t) all liens, guaranties, rights, remedies, and privileges pertaining to any of the foregoing ((a) through (t)), including the right of stoppage in transit; and

(u) any of the foregoing, and all products, Proceeds (cash and non-cash), substitutions, Accessions and/or replacements of or to any of the foregoing;

provided, however, that the DIP Collateral shall include recoveries or settlements arising under Chapter 5 of the Bankruptcy Code only (i) to the full amount of any such recovery or settlement if made under Section 549 of the Bankruptcy Code, and (ii) in an amount necessary to reimburse the Lender for the amount of the Carve-Out, if any, used to finance the pursuit of such recovery or settlement with respect to any other recovery or settlement under Chapter 5 of the Bankruptcy Code (collectively, the "**DIP Collateral**").

(f) **DIP Lien Priority**. The DIP Liens created and granted to the DIP Lender, as provided in the Interim Order and this Final Order, (a) are created pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, (b) are first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or lien or claim to any

16

of the DIP Collateral, and are subject only to: (x) the Carve-Out, and (y) any Permitted Prior Liens. The DIP Liens shall secure all DIP Liabilities. The DIP Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Cases and shall be valid and enforceable against any trustee appointed in the Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "**Successor Cases**"), and/or upon the dismissal of any of the Cases. The DIP Liens shall not be subject to Sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code.

(g) **Enforceable Obligations**. The DIP Financing Agreements shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, their estates and any successors thereto and their creditors, in accordance with their terms.

(h) **Protection of DIP Lender and Other Rights**. From and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Financing Agreements, the Interim Order and this Final Order and in strict compliance with the Budget (subject to any variances thereto permitted by the DIP Financing Agreements).

(i) **Superpriority Administrative Claim Status.** Subject to the Carve-Out, all DIP Liabilities shall be an allowed superpriority administrative expense claim (the "**DIP Superpriority Claim**" and, together with the DIP Liens, the "**DIP Protections**") with priority in all of the Cases and Successor Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature

17

whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment provided however, that the DIP Superpriority Claim shall only extend to any avoidance actions or claims arising under chapter 5 of the Bankruptcy Code to the extent those actions or claims constitute a portion of the DIP Collateral. Other than the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 328, 330, and 331, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the DIP Protections or the DIP Liabilities, or with any other claims of the DIP Lender arising hereunder.

3. **Authorization to Use Cash Collateral and Proceeds of DIP Financing Agreements**. Pursuant to the terms and conditions of the Interim Order and this Final Order, the DIP Financing Agreements, and in accordance with the budget (as the same may be modified from time to time consistent with the terms of the DIP Financing Agreements (the "**Budget**"), filed on record in the Cases and introduced into evidence at the Interim Hearing, the Debtors are authorized to use Cash Collateral and the advances under the DIP Financing Agreements during the period commencing immediately after the entry of the Interim Order and terminating upon the Termination Date (as defined in the DIP Loan Agreement). The Budget may be updated (with the consent and/or at the request of the DIP Lender from time to time and in consultation with the Committee, provided that such updated Budget shall be in form and substance

18

acceptable to the DIP Lender, in its reasonable discretion, and the Debtors shall be required always to comply with the Budget pursuant to the terms of the DIP Financing Agreements.

4. **Adequate Protection for Pre-Petition Lender**. As adequate protection for any Diminution in Value of its interest in the Pre-Petition Collateral (including Cash Collateral), the Pre-Petition Lender shall receive adequate protection as follows:

(a) **Pre-Petition Replacement Liens**. To the extent of the Diminution in Value of the Pre-Petition Collateral, the Pre-Petition Lender was granted pursuant to the Interim Order and sections 361, 363(e) and 364(d) of the Bankruptcy Code, additional and replacement security interests and liens in the DIP Collateral (the "**Pre-Petition Replacement Liens**"), and such grant is hereby ratified, confirmed and approved on a final basis, subject to the terms and conditions set forth below. The Pre-Petition Replacement Liens shall be junior only to the DIP Liens, the Carve-Out, and Permitted Prior Liens as provided herein and otherwise shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Cases. The Pre-Petition Replacement Liens shall be valid and enforceable in any Successor Case, against any trustee appointed in the Cases or any Successor Case, and/or upon the dismissal of any of the Cases or any Successor Case. The Pre-Petition Replacement Liens shall not be subject to Sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code.

(b) **Pre-Petition Superpriority Claim**. To the extent of the Diminution in Value of the Pre-Petition Collateral, the Pre-Petition Lender was granted pursuant to the Interim Order (and such grant is hereby ratified, confirmed and approved on a final basis) an allowed superpriority administrative expense claim (the "**Pre-Petition Superpriority Claim**") under sections 503(b) and 507(b) of the Bankruptcy Code in these Cases and any Successor Case. The

Pre-Petition Superpriority Claim shall be junior only to the DIP Liens, the DIP Superpriority Claim, and the Carve-Out, provided however, that the Pre-Petition Superpriority Claim shall only extend to any avoidance actions or claims arising under chapter 5 of the Bankruptcy Code to the extent those actions or claims constitute a portion of the DIP Collateral.. Except as set forth herein, the Pre-Petition Superpriority Claim shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. Other than the DIP Liens, the DIP Superpriority Claim and the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code Sections 328, 330, and 331, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the Pre-Petition Superiority Claim.

(c) **Adequate Protection Payments**. The Pre-Petition Lender shall receive adequate protection in the form of (i) payment of the proceeds of the DIP Collateral and the Pre-Petition Collateral pursuant to paragraph 14 of this Final Order, (ii) payment in full of the remaining Pre-Petition Senior Debt in accordance with paragraph 2(c) of this Final Order, (iii) payments on account of interest (which shall be payable at the pre-default rate under the Pre-Petition Financing Agreements), fees, costs, expenses (including reasonable attorneys' fees and expenses), indemnities and other amounts with respect to the Pre-Petition Senior Debt in

accordance with the Pre-Petition Financing Agreements, and (iv) all letters of credit issued and all obligations on account of cash management services and bank products incurred under the Pre-Petition Financing Agreements shall be deemed issued and incurred under the DIP Financing Agreements and deemed to constitute "Obligations" thereunder (collectively, the "**Adequate Protection Payments**").

(d) **Pre-Petition Indemnity Account**. Unless already established, upon the entry of this Final Order, the Debtors shall establish an interest bearing account in the control of the Pre-Petition Lender (the "**Pre-Petition Indemnity Account**") into which the sum of $100,000.00 shall be deposited as security for any reimbursement, indemnification or similar continuing obligations of the Debtors in favor of the Pre-Petition Lender under the Pre-Petition Agreements and to pay any expenses (including reasonable attorneys' fees) incurred by the Pre-Petition Lender in connection with these Cases or any Successor Case (the "**Pre-Petition Indemnity Obligations**"); provided, however, that the Pre-Petition Indemnity Account shall terminate and all remaining amounts held therein shall be released to the Debtors, if all Pre-Petition Senior Debt has been irrevocably paid in full in cash and the earliest to occur of: (a) the Challenge Period Termination Date (as defined below) if, as of such date, no party has asserted a claim or cause of action or commenced an adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in paragraph 7 hereof, or if such a challenge has been (i) asserted – upon delivery to the Pre-Petition Lender of a release of the claim on which such assertion was made, or (ii) commenced -- the dismissal with prejudice or the entry of a final judgment resolving such challenge, and (b) the date the Court enters a final order closing the Cases. The Pre-Petition Indemnity Obligations shall be secured by the Pre-Petition Liens, the

Pre-Petition Replacement Liens, the Pre-Petition Superpriority Claim, and a first-priority lien on the Pre-Petition Indemnity Account.

5.    **Section 507(b) Reservation**.  Nothing herein shall impair or modify the Pre-Petition Lender's rights under Section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Pre-Petition Lender hereunder is insufficient to compensate for the Diminution in Value of the interest of the Pre-Petition Lender in the Pre-Petition Collateral during the Cases or any Successor Case or if the funds in the Pre-Petition Indemnity Account proves insufficient, provided, however, that any Section 507(b) claim granted in the Cases to the Pre-Petition Lender shall be junior in right of payment to all DIP Liabilities and subject to the Carve-Out.

6.    **Post-Petition Lien Perfection**.  The Interim Order or this Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Pre-Petition Replacement Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, securities account control agreement, or credit card processing agreement) to validate or perfect the DIP Liens and the Pre-Petition Replacement Liens or to entitle the DIP Liens and the Pre-Petition Replacement Liens to the priorities granted herein.  Notwithstanding the foregoing, the DIP Lender and the Pre-Petition Lender may, each in its sole discretion, file such financing statements, mortgages, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices, and other agreements or documents shall be deemed to

have been filed or recorded at the time and on the date of the commencement of the Cases. The Debtors shall execute and deliver to the DIP Lender and the Pre-Petition Lender all such financing statements, mortgages, notices, and other documents as the DIP Lender and the Pre-Petition Lender may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens and the Pre-Petition Replacement Liens granted pursuant hereto. The DIP Lender and the Pre-Petition Lender, in their respective discretion, may file a photocopy of the Interim Order or this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of the Interim Order or this Final Order. The DIP Lender shall, in addition to the rights granted to it under the DIP Financing Agreements, be deemed to be the successor in interest to, and shall be entitled to all rights and benefits of, the Pre-Petition Lender with respect to all third party notifications in connection with the Pre-Petition Financing Agreements, all access agreements and all other agreements with third parties (including any agreement with a customs broker, licensor, freight forwarder or credit card processor) relating to, or waiving claims against, any Pre-Petition Collateral, including without limitation, each collateral access agreement duly executed and delivered by any landlord of the Debtors and including, for the avoidance of doubt, all deposit account control agreements, securities account control agreements, and credit card processing agreements, provided that the Pre-Petition Lender shall continue to have all rights pursuant to each of the foregoing.

RLF1 3618725v. 1

7. **Reservation of Certain Third Party Rights and Bar of Challenges and Claims.**[3] Nothing in the Interim Order, this Final Order, or the DIP Financing Agreement shall prejudice whatever rights the Committee may have (a) to object to or challenge the findings herein, including, but not limited to, those in relation to (i) the validity, extent, perfection or priority of the mortgage, security interests and liens of the Pre-Petition Lender in and to the Pre-Petition Collateral, or (ii) the validity, allowability, priority, status or amount of the Pre-Petition Senior Debt, or (b) to bring suit against the Pre-Petition Lender in connection with or related to the Pre-Petition Debt, or the actions or inactions of the Pre-Petition Lender arising out of or related to the Pre-Petition Senior Debt (each, a **"Challenge"**); provided, however, that, unless the Committee commences a contested matter or adversary proceeding raising a Challenge, including without limitation any claim against the Pre-Petition Lender in the nature of a setoff, counterclaim, or defense to the Pre-Petition Senior Debt (including but not limited to, those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against the Pre-Petition Lender), within the earliest of: (x) the earlier of (1) 75 days after the Petition Date or (2) 60 days after the appointment of the Committee (or if a Chapter 11 Trustee is appointed or the Case converted to a case under Chapter 7 during the Challenge Period (as defined below), 60 days after the appointment of an Interim Chapter 7 Trustee or the Chapter 11 Trustee), (y) the date that written notice is received from counsel to the Committee that no Challenge shall be asserted by the Committee, or (z) the date an order is entered confirming a Plan (as defined below) (collectively, (x), (y) and (z) shall be referred to as the **"Challenge**

---

[3] For purposes of clarity and the avoidance of doubt, nothing in this Final Order shall limit, modify, or affect the rights of Trimaran Fund II, L.L.C., Trimaran Parallel Fund II, L.P., Trimaran Capital, L.L.C., CIBC Employee Private Equity Fund (Trimaran) Partners, CIBC Capital Corporation and their direct or indirect parent entities, subsidiaries, or affiliates, including pursuant to the Intercreditor Agreements that they may have entered into with the Pre-Petition Lender, and the Challenge Period shall not apply to those entities.

**Period**," and the date that is the next calendar day after the termination of the Challenge Period, in the event that no Challenge has been raised during the Challenge Period shall be referred to as the "**Challenge Period Termination Date**"), upon the Challenge Period Termination Date, any and all Challenges by any party (including, without limitation, the Committee, any Chapter 11 or Chapter 7 trustee appointed herein or in any Successor Case, and any other party in interest) shall be forever waived and barred, and the Pre-Petition Senior Debt shall be allowed in full as a fully secured claim within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Cases or any Successor Case. The Challenge Period may only be extended (i) by order of the Bankruptcy Court following notice and a hearing for cause shown, in which the motion for such an order has been filed prior to the expiration of the Challenge Period, or (ii) with the written consent of the Pre-Petition Lender. To the extent that any Challenge is filed, the Pre-Petition Lender shall be entitled to include all costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending the Challenge as part of the Pre-Petition Senior Debt as provided in the Pre-Petition Financing Agreements. The Committee is hereby granted standing and the authority to file an objection or complaint on behalf of the Debtors' estates raising any and all claims and defenses without further motion seeking authority to bring such action and without further order of this Court.

8. **Carve-Out**.

(a) Subject to the terms and conditions contained in this paragraph 8, the DIP Liens, the DIP Superpriority Claim, the Pre-Petition Liens, the Pre-Petition Replacement Liens, the Pre-Petition Superpriority Claims, and the Pre-Petition Indemnity Account are subordinate only to the following (the "**Carve-Out**"): The sum of (i) allowed administrative expenses pursuant to 28 U.S.C. Section 1930(a)(6); (ii) accrued and

unpaid fees and expenses of attorneys and financial advisors employed by the Debtors and the Committee pursuant to Sections 327 and 1103 of the Bankruptcy Code (the **"Case Professionals"**), and accrued reasonable expenses of the members of the Committee (**"Committee Expenses"**), in each case to the extent provided for and in compliance with the Budget; (iii) notwithstanding the amounts specified in the Budget, an additional amount not to exceed $250,000 in the aggregate to be applied to any subsequently allowed and unpaid fees and expenses of Case Professionals and Committee Expenses in excess of those provided for in clause (b) of this paragraph 8, whenever those fees and expenses may have been incurred; and (iv) an amount, not to exceed $300,000, equal to the aggregate cost savings realized by the Debtors through the Termination Date with respect to any disbursements contemplated by the Budget (the **"Budget Savings"**) to be allocated equally among the Debtors' professionals and the Committee's professionals. Upon the occurrence of the Termination Date, the DIP Lender shall deposit into an escrow account to be maintained by counsel to the Debtors an amount equal to (i) all accrued and unpaid fees and expenses of Case Professionals and Committee Expenses provided in the Budget, (ii) $250,000, and (iii) the Budget Savings to fund the Carve-Out.

(b) As provided in the DIP Loan Agreement, Overall Availability (as defined therein) shall be reduced by a reserve in the amount of the Carve-Out. The Carve-Out shall exclude any fees and expenses (x) incurred in connection with the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief (A) invalidating, setting aside, avoiding, or

26

subordinating, in whole or in part, (i) the DIP Liabilities, (ii) the DIP Lender's Liens in the DIP Collateral, (iii) the Pre-Petition Debt, or (iv) the Pre-Petition Liens in the Pre-Petition Collateral or the Pre-Petition Replacement Liens, or (B) preventing, hindering, or delaying, whether directly or indirectly, the DIP Lender's or the Pre-Petition Lender's assertion or enforcement of their Liens and security interests, or their efforts to realize upon any DIP Collateral, Pre-Petition Collateral, the Pre-Petition Replacement Liens, or the Pre-Petition Indemnity Account, provided, however, that such exclusion does not encompass any investigative work conducted by the Case Professionals retained by the Committee prior to bringing any action relating to the foregoing, (y) incurred incidental to efforts (1) to obtain authorization to use cash collateral of the DIP Lender or the Pre-Petition Lender without their consent, (2) selling or otherwise disposing of any DIP Collateral or Pre-Petition Collateral (except as contemplated in the DIP Loan Agreement), or (3) to obtain financing or indebtedness not permitted under the DIP Loan Agreement, without the DIP Lender's express written consent or the express prior written consent of the Pre-Petition Lender, as applicable, or (z) arising after the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code. Except as otherwise provided in this paragraph 8, nothing contained in the Interim Order or this Final Order shall be deemed a consent by the Pre-Petition Lender or DIP Lender to any charge, lien, assessment or claim against the DIP Collateral, the Pre-Petition Collateral, the Pre-Petition Replacement Liens, or the Pre-Petition Indemnity Account under Section 506(c) of the Bankruptcy Code or otherwise. Nothing herein shall be construed to obligate the Pre-Petition Lender or DIP Lender, in any way, to pay any professional

fees of any Case Professional, expenses of any Committee member or U.S. Trustee Fees, or to assure that the Debtors have sufficient funds on hand to pay any of the foregoing. Subject to Paragraph 9 hereof, so long as the Termination Date shall not have occurred, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code and in accordance with the Budget as the same may be due and payable and that payment shall not reduce the Carve-Out. The payment of the Carve-Out shall not reduce the amount of the DIP Liabilities or the Pre-Petition Senior Debt. Upon funding of the Carve-Out as provided herein, the DIP Lender and the Pre-Petition Lender shall have fully satisfied any obligation that either of them may have had with respect to the Carve-Out and neither of them shall have any further liability or responsibility with respect thereto, including no responsibility with respect to disbursement of all or any portion of the Carve-Out.

9. **Payment of Compensation**. Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, the Committee or of any person or shall affect the rights of the DIP Lender and the Pre-Petition Lender to object to the allowance and payment of such fees and expenses or to permit the Debtors to pay any such amounts not set forth in the Budget.

10. **Section 506(c) Claims**. There shall not be any charge, lien, assessment, or claim against the DIP Collateral, the Pre-Petition Collateral, the Pre-Petition Replacement Liens, or the Pre-Petition Indemnity Account under Section 506(c) of the Bankruptcy Code or otherwise. The Debtors hereby waive any rights and claims under Section 506(c) of the Bankruptcy Code with respect to the DIP Collateral, the Pre-Petition Collateral, the Pre-Petition Replacement Liens, or

28

the Pre-Petition Indemnity Account, and such waiver shall be binding upon any successor of the Debtors in these Cases or any Successor Case, including a chapter 7 trustee, as well as upon the Committee.

11. **Collateral Rights**. Unless the DIP Lender and the Pre-Petition Lender has provided its prior written consent, there shall not be entered in these proceedings, or in any Successor Case, any order which authorizes any of the following:

(a) except as permitted under the DIP Loan Agreement, the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral, the Pre-Petition Collateral, the Pre-Petition Replacement Liens, or the Pre-Petition Indemnity Account and/or entitled to priority administrative status which is equal or senior to those granted to the DIP Lender, or the Pre-Petition Lender; or

(b) relief from stay permitting any person holding a lien junior to the liens of the DIP Lender or the Pre-Petition Lender to realize on any material portion or material amount of the DIP Collateral or the Pre-Petition Collateral or the Debtors' property subject to Pre-Petition Replacement Liens, as applicable; or

(c) the Debtors' return of goods constituting DIP Collateral pursuant to section 546(h) of the Bankruptcy Code, except as expressly permitted by the DIP Loan Agreement.

12. **Proceeds of Subsequent Financing**. Without limiting the provisions and protections of paragraph 11 above, if at any time prior to the Full Payment of Senior Obligations, the Debtors, their estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed shall obtain credit or incur debt pursuant to Bankruptcy Code

Sections 364(b), 364(c) or 364(d) in violation of the DIP Loan Agreement, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be applied as follows: (a) first, to reduce the Pre-Petition Senior Debt until the Full Payment of Senior Obligations in respect of such Pre-Petition Senior Debt, (b) second, to reduce the DIP Liabilities until the Full Payment of the Senior Obligations in respect of such DIP Liabilities, and (c) third, as otherwise ordered by the Court.

13.    **Termination Date**.  All (i) DIP Liabilities shall be immediately due and payable, and (ii) authority to use the proceeds of the DIP Financing Agreements and to use Cash Collateral shall cease, on the Termination Date.

14.    **Payment from Proceeds of Collateral**.  All products and proceeds of the DIP Collateral and the Pre-Petition Collateral (including, for the avoidance of doubt, proceeds from receivables and sales in the ordinary course of business, insurance proceeds, and proceeds of all dispositions thereof, whether or not in the ordinary course) regardless of whether such collateral came into existence prior to the Petition Date, shall be applied as follows: (a) first, to reduce the Pre-Petition Senior Debt until the Full Payment of Senior Obligations in respect of such Pre-Petition Senior Debt, (b) second, to fund the Carve-Out, and (c) third, to reduce the DIP Liabilities until the Full Payment of the Senior Obligations in respect of such DIP Liabilities.

15.    **Disposition of Collateral**.  The Debtors shall not (a) sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral, without the prior written consent of the DIP Lender (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Lender or an order of this Court), except for sales of the Debtors' inventory in the ordinary course of business or except as otherwise provided for in the DIP Loan Agreement and this Final Order or as approved by the Court, or (b) assume, reject or assign any

30

leasehold interest without prior consultation with the DIP Lender, except as otherwise provided for in the DIP Loan Agreement. In accordance with and subject to the DIP Loan Agreement, upon the request of the DIP Lender, the Debtors shall file a motion, in form and substance satisfactory to the DIP Lender to establish bidding procedures for the disposition of all of the Debtors' assets. The Debtors shall file such motion within five (5) business days of the DIP Lender's request and shall diligently prosecute such motion. Upon the sale of any DIP Collateral or Pre-Petition Collateral pursuant to Section 363 of the Bankruptcy Code, any DIP Collateral or Pre-Petition Collateral shall be sold free and clear of the Pre-Petition Liens and the Pre-Petition Replacement Liens, provided however, such liens shall attach to the proceeds of any such sale in the order and priority as set forth in this Final Order and the DIP Financing Agreements and all such proceeds shall be paid to the DIP Lender and the Pre-Petition Lender at closing.

16. **Events of Default.** The occurrence of any of the following events shall constitute an event of default under this Final Order (a **"DIP Order Event of Default"**):

(a) Failure by any of the Debtors to comply with any material term of the Interim Order or this Final Order;

(b) A Default (as defined in the DIP Loan Agreement); or

(c) The Termination Date.

17. **Rights and Remedies Upon DIP Order Event of Default.**

(a) Any automatic stay otherwise applicable to the DIP Lender is hereby modified so that after the occurrence of any DIP Order Event of Default and at any time thereafter upon five (5) business days prior notice of such occurrence, in each case given to each of counsel for the Debtors, counsel for the Committee, and the U.S. Trustee, the DIP Lender shall be entitled to exercise its rights and remedies in accordance with the DIP Financing Agreements. Immediately following the giving of notice by the DIP Lender of the occurrence of

a DIP Order Event of Default: (i) the Debtors shall continue to deliver and cause the delivery of the proceeds of DIP Collateral to the DIP Lender as provided in the DIP Loan Agreement and this Final Order; (ii) the DIP Lender shall continue to apply such proceeds in accordance with the provisions of this Final Order and the DIP Loan Agreement; (iii) the Debtors shall have no right to use any of such proceeds, nor any other Cash Collateral other than towards the satisfaction of the Pre-Petition Senior Debt and DIP Liabilities and payment of compensation and reimbursement of expenses allowed and payable to Case Professionals under sections 330 and 331 of the Bankruptcy Code and in accordance with the Budget as the same may be due and payable; and (iv) any obligation otherwise imposed on the DIP Lender or the DIP Lenders to provide any loan or advance to the Debtors pursuant to the DIP Facility shall be suspended. Following the giving of notice by the DIP Lender of the occurrence of a DIP Order Event of Default, the Debtors and the Committee shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether a DIP Order Event of Default has occurred. If the Debtors and the Committee do not contest the right of the DIP Lender to exercise its remedies based upon whether a DIP Order Event of Default has occurred within such time period, or if the Debtors do timely contest the occurrence of a DIP Order Event of Default and the Court after notice and hearing declines to stay the enforcement thereof, the automatic stay, as to the DIP Lender shall automatically terminate at the end of such notice period.

(b)     In any exercise of their rights and remedies under the DIP Financing Agreements upon a DIP Order Event of Default, the DIP Lender is authorized to proceed under or pursuant to the DIP Financing Agreements.

(c)     Nothing included herein shall prejudice, impair, or otherwise affect the Pre-Petition Lender's or the DIP Lender's rights to seek any other or supplemental relief in

respect of the Debtors or the DIP Lender's rights, as provided in the DIP Financing Agreements, to suspend or terminate the making of loans under the DIP Financing Agreements.

(d)     Notwithstanding anything in this Final Order to the contrary, in the event that either the DIP Lender or the Pre-Petition Lender exercises its rights and remedies upon a default and seeks to take possession of any premises where its collateral is located, its rights and remedies with respect to taking possession of such premises shall be limited to (i) relief provided by further order of this Court; (ii) any agreement with the applicable landlord; and (iii) applicable nonbankruptcy law.

18.     **Proofs of Claim**.     The Pre-Petition Lender and the DIP Lender will not be required to file proofs of claim in these Cases or any Successor Case. The Debtors' Stipulations as set forth herein shall constitute a proof of claim on behalf of the Pre-Petition Lender.

19.     **Other Rights and Obligations**.

(a)     **Good Faith Under Section 364(e) of the Bankruptcy Code. No Modification or Stay of this Final Order**. The DIP Lender and the Pre-Petition Lender have acted in good faith in connection with the Interim Order and this Final Order and their reliance on each is in good faith. Based on the findings set forth in the Interim Order and this Final Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Final Order, in the event any or all of the provisions of the Interim Order or this Final Order are hereafter modified, amended, or vacated by a subsequent order of this or any other Court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code and no such modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby. Notwithstanding any such modification, amendment or vacation, any claim granted to

33

the DIP Lender (or the Pre-Petition Lender) hereunder arising prior to the effective date of such modification, amendment or vacation of any DIP Protections (or protections in favor of the Pre-Petition Lender) granted to the DIP Lender (or the Pre-Petition Lender, as applicable) shall be governed in all respects by the original provisions of the Interim Order or this Final Order, as applicable, and the DIP Lender (and the Pre-Petition Lender, as applicable) shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Protections granted herein, with respect to any such claim. Since the loans made pursuant to the DIP Loan Agreement are made in reliance on the Interim Order andr this Final Order (and since the permission granted hereunder to use Cash Collateral on the part of the Pre-Petition Lender is made in reliance on the Interim Order and this Final Order), the obligations owed to the DIP Lender (or the Pre-Petition Lender, as applicable) prior to the effective date of any stay, modification or vacation of the Interim Order or this Final Order shall not, as a result of any subsequent order in the Cases or in any Successor Cases, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Lender (or the Pre-Petition Lender, as applicable) under the Interim Order, this Final Order and/or the DIP Financing Agreements.

(b)     **Expenses**. As provided in the DIP Financing Agreements, all costs and expenses of the DIP Lender in connection with the DIP Financing Agreements, including, without limitation, reasonable legal, accounting, collateral examination, monitoring, and appraisal fees, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement of fees and expenses, and other out of pocket expenses will be paid by the Debtors, whether or not the transactions contemplated hereby are consummated. Payment of such fees shall not be subject to allowance by the Court. The DIP Lender shall provide to the

34

U.S. Trustee and counsel to the Committee, on a monthly basis, the total amount of professional fees and expenses incurred per calendar month in the Cases, and upon request, the DIP Lender shall provide the invoices relating to such fees and expenses, redacted as necessary to remove any privileged or otherwise confidential information, with such invoices subject to objection as to reasonableness, with any unresolved objection to be resolved by the Court. Under no circumstances shall professionals for the DIP Lender or Pre-Petition Lender be required to comply with the U.S. Trustee fee guidelines.

(c) **Binding Effect**. The provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Lender, the Pre-Petition Lender, and the Debtors. Any successors or assigns of the Debtors (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 case shall be bound by the provisions of the Interim Order and this Final Order.

(d) **No Waiver**. The failure of the Pre-Petition Lender and the DIP Lender to seek relief or otherwise exercise their rights and remedies under the DIP Financing Agreements, the DIP Facility, the Pre-Petition Financing Agreements, the Interim Order, this Final Order or otherwise, as applicable, shall not constitute a waiver of any of the Pre-Petition Lender's or the DIP Lender's rights hereunder, thereunder, or otherwise. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the Pre-Petition Lender or the DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Pre-Petition Lender and the DIP Lender to (i) request conversion of the Cases to cases under Chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases, (ii) propose,

35

subject to the provisions of section 1121 of the Bankruptcy Code, a plan of reorganization or plan of liquidation for the Debtors (a **"Plan"**), or (iii) exercise any of the rights, claims or privileges (whether legal, equitable, or otherwise) of the DIP Lender or the Pre-Petition Lender.

(e) **No Third Party Rights**. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

(f) **No Marshaling**. Neither the DIP Lender nor the Pre-Petition Lender shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Pre-Petition Collateral, as applicable.

(g) **Section 552(b)**. The DIP Lender and the Pre-Petition Lender shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Lender or the Pre-Petition Lender with respect to proceeds, product, offspring, or profits of any of the Pre-Petition Collateral, the Debtors' property subject to Pre-Petition Replacement Liens, or the DIP Collateral, except that with respect to the Pre-Petition Lender, this determination is subject to rights of parties in interest under paragraph 7 above.

(h) **Amendment**. The Debtors and the DIP Lender may enter into waivers, consents and amendments with respect the DIP Financing Agreements without the need for further Court approval provided that: (i) notice is given to the Office of the United States Trustee and the Committee, and (ii) such amendment, consent or waiver, in the reasonable judgment of the Debtors and the DIP Lender, after consultation with the Committee, is both non-prejudicial to the rights of third parties and is not material. Except as otherwise provided herein, no waiver, consent, modification, or amendment of any of the provisions of this Final Order or the DIP

Financing Agreements shall be effective unless set forth in writing, signed by or on behalf of all the Debtors and the DIP Lender.

(i) **Survival of Orders**.[4] The provisions of the Interim Order and this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in the Cases, (ii) converting any of the Cases to a case(s) under chapter 7 of the Bankruptcy Code, or (iii) dismissing any of the Cases, (iv) withdrawing of the reference of any of the Cases from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court. The terms and provisions of the Interim Order and this Final Order, including the DIP Protections granted pursuant to the Interim Order, this Final Order and the DIP Financing Agreements and any protections granted the Pre-Petition Lender, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections and protections for the Pre-Petition Lender shall maintain their priority as provided by this Final Order until all the obligations of the Debtors to the DIP Lender pursuant to the DIP Financing Agreements and the Pre-Petition Senior Debt have been indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms). The DIP Liabilities shall not be discharged by the entry of an order confirming a Plan, the Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code. The Debtors shall not propose or support any Plan that is not conditioned upon the payment in full in cash of all of the DIP Liabilities and the remaining Pre-Petition Senior Debt on or prior to the earlier to occur of (i) the effective date of such Plan and (ii) the Termination Date.

---

[4] Nothing in this Paragraph 19(i) or Paragraph 20 below shall limit, modify, or affect the rights of Trimaran Fund II, L.L.C., Trimaran Parallel Fund II, L.P., Trimaran Capital, L.L.C., CIBC Employee Private Equity Fund (Trimaran) Partners, CIBC Capital Corporation and their direct or indirect parent entities, subsidiaries, or affiliates to object to the terms and conditions of the proposed Final Order.

(j) **Inconsistency**. In the event of any inconsistency between the terms and conditions of the DIP Financing Agreements, the Interim Order and this Final Order, the provisions of this Final Order shall govern and control.

(k) **Enforceability**. This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.

(l) **Objections Overruled**. All objections to the DIP Motion to the extent not withdrawn or resolved, are hereby overruled.

(m) **No Waivers or Modification of Final Order**. The Debtors irrevocably waive any right to seek any modification or extension of this Final Order without the prior written consent of the DIP Lender and the Pre-Petition Lender and no such consent shall be implied by any other action, inaction, or acquiescence of the DIP Lender or the Pre-Petition Lender, as applicable.

(n) **Waiver any Applicable Stay**. Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Final Order.

20. **Survival of Protections**. Unless and until the Full Payment of Senior Obligations, the protections afforded to the Pre-Petition Lender and the DIP Lender pursuant to the Interim Order, this Final Order and under the DIP Financing Agreements, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting the Cases to a case(s) under Chapter 7 of the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claim, the Pre-Petition Replacement Liens, Pre-Petition Indemnity Account and the Pre-Petition Superpriority Claims shall continue in these proceedings and in any Successor

RLF1 3618725v. 1

Case, and such DIP Liens, DIP Superpriority Claim, Pre-Petition Replacement Liens, Pre-Petition Indemnity Account and the Pre-Petition Superpriority Claims shall maintain their respective priority as provided by this Final Order.

21. **Retention of Jurisdiction**. The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

Dated: October 13, 2010
      Wilmington, Delaware

                       THE HONORABLE KEVIN J. CAREY
                       UNITED STATES BANKRUPTCY JUDGE

1252847.2