**ORIGINAL**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **Urban Brands, Inc.,** *et al.,*[1] | ) | **Case No. 10-13005 (KJC)** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |
| | ) | |

## ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (C) ESTABLISHING ASSUMPTION AND REJECTION PROCEDURES FOR CERTAIN ADDITIONAL EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVING GUIDELINES FOR CONDUCTING STORE CLOSING SALES; (E) APPROVING AGENCY AGREEMENT; AND (F) EXTENDING THE DEADLINE TO ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY PURSUANT TO 11 U.S.C. § 365(D)(4)

Upon the motion, dated September 22, 2010 (the "Motion"), of Urban Brands, Inc. and

certain of its affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"),

pursuant to sections 105(a), 363, 365, and 503 of chapter 11 of the United States Code (the

---

[1] The Debtors in these cases, along with the last four digits of the federal tax identification number for each of the Debtors, are Urban Brands, Inc. (3678), 100% Girls Ltd. (4150), 100% Girls of Georgia, Inc. (4159), 100% Girls of New York, Inc. (2149), 100 Percent Girls of New Jersey, Inc. (4167), A.S. Interactive, Inc. (3472), Ashley Stewart Ltd. (4541), Ashley Stewart Apparel Corporation (4049), Ashley Stewart Clothing Company, Inc. (4051), Ashley Stewart Management Co., Inc. (4053), Ashley Stewart Woman Ltd. (4152), ASIL 6, Inc. (3996), ASNJ 10, Inc. (4004), Carraizo Alto Apparel Corporation (4651), Church Street Retail, Inc. (5954), Kid Spot Ltd. (2585), Kidspot of Delaware, Inc. (2596), Kidspot of Illinois, Inc. (2606), Kidspot of Michigan, Inc. (2603), Kidspot of New Jersey, Inc. (2601), Kidspot of Ohio, Inc. (4705), Kidspot of Pennsylvania, Inc. (2599), Kidspot of Texas, Inc. (3809), Large Apparel of Alabama, Inc. (0624), Large Apparel of California, Inc. (2129), Large Apparel of Connecticut, Inc. (5161), Large Apparel of District of Columbia, Inc. (8613), Large Apparel of Florida, Inc. (2209), Large Apparel of Georgia, Inc. (3894), Large Apparel of Illinois, Inc. (4650), Large Apparel of Indiana, Inc. (4055), Large Apparel of Louisiana, Inc. (3790), Large Apparel of Maryland, Inc. (5158), Large Apparel of Michigan, Inc. (9420), Large Apparel of Mississippi, Inc. (5913), Large Apparel of Missouri, Inc. (2135), Large Apparel of New Jersey, Inc. (5157), Large Apparel of New York, Inc. (5956), Large Apparel of North Carolina, Inc. (8611), Large Apparel of Ohio, Inc. (3815), Large Apparel of Pennsylvania, Inc. (4057), Large Apparel of South Carolina, Inc. (2029), Large Apparel of Tennessee, Inc. (3895), Large Apparel of Texas, Inc. (3787), Large Apparel of Virginia, Inc. (2809), Large Apparel of Wisconsin, Inc. (3898), Marianne Ltd. (3940), Marianne USPR, Inc. (2193), Marianne VI, Inc. (2206), Metro Apparel of Kentucky, Inc. (7533), Metro Apparel of Massachusetts, Inc. (1367), The Essence of Body & Soul, Ltd. (4165), Urban Acquisition Corporation of New Jersey, Inc. (2976), Urban Acquisition Corporation of New York, Inc. (4103), and Urban Brands TM Holding Co. (5909). The Debtors' corporate offices are located at 100 Metro Way, Secaucus, New Jersey 07094.

"Bankruptcy Code") and Rules 2002, 6003, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for (I) Entry of an Order (A) Establishing Bidding and Auction Procedures Related to the Sale of Substantially All of the Debtors' Assets; (B) Approving Related Bid Protections; (C) Scheduling an Auction and Sale Hearing; (D) Establishing Certain Notice Procedures for Determining Cure Amounts for Executory Contracts and Leases to Be Assigned; and (E) Granting Certain Related Relief; and (II) Entry of an Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (C) Establishing Assumption and Rejection Procedures for Certain Additional Executory Contracts and Unexpired Leases; (D) Approving Guidelines for Conducting Store Closing Sales; (E) Approving Agency Agreement; and (F) Extending the Deadline to Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to 11 U.S.C. § 365(d)(4); after holding a hearing on October 4, 2010 (the "Procedures Hearing") this Court entered an Order dated October 4, 2010 (the "Procedures Order"), (A) Establishing Bidding and Auction Procedures Related to the Sale of All of the Debtors' Assets; (B) Approving Bid Protections for the Sale of the Debtors' Assets; (C) Scheduling an Auction and Sale Hearing for the Sale of the Debtors' Assets; (D) Establishing Certain Notice Procedures for Determining Cure Amounts for Executory Contracts and Leases To Be Assigned; and (E) Granting Certain Related Relief; and an auction having been held on October 25, 2010 (the "Auction") for the consideration of Qualified Bids and the selection of a Successful Bidder (each as defined in the Procedures Order) and New Ashley Stewart LLC (the "Purchaser") having been selected as the Successful Bidder; and upon the Purchaser and the Debtors having entered into that certain Asset Purchase Agreement, dated as of September 21, 2010, as amended and

restated on October 26, 2010 (attached hereto as **Exhibit A**, and as may be further amended, supplemented or restated, the "Purchase Agreement") pursuant to which the Purchaser shall acquire substantially all of the assets of the Purchaser (the "Purchased Assets") as a going concern; and upon the Debtors and Gordon Brothers Retail Partners, LLC (the "Agent") having entered into that certain Agency Agreement, dated as of September 21, 2010 (attached hereto as **Exhibit B**, and as may be amended, supplemented or restated, the "Agency Agreement" and together with the Purchase Agreement, the "Agreements")[2] pursuant to which the Agent shall have the right to conduct store closing sales (the "Store Closing Sales") for certain non-continuing stores of the Debtors (as used herein, the "Stores" or the "Non-Continuing Stores" and as to the disposable assets designated by the Purchaser with respect thereto, the "Disposable Assets") in accordance with the sale guidelines (attached as **Schedule 1** to Exhibit B, as may be amended, supplemented or restated, the "Sales Guidelines"); and the Bankruptcy Court having conducted a hearing on the Motion on October 27, 2010 (the "Sale Approval Hearing"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Purchase Agreement and the Agency Agreement; and the Bankruptcy Court having reviewed and considered the Motion and all objections thereto (such filed objections, if any, being referred to as the "Filed Objections"), and the arguments of counsel made, and the evidence adduced, at the Procedures Hearing and the Sale Approval Hearing; and upon the record of the Procedures Hearing and the Sale Approval Hearing and these chapter 11 cases and proceedings, and after due deliberation thereon, and good cause appearing therefor;

---

[2] Capitalized terms used herein but not defined herein shall have the meaning ascribed to such terms in the Purchase Agreement or the Agency Agreement, as applicable. For the avoidance of doubt, nothing in this Sale Order shall obligate either the Agent or the Purchaser with respect to the other party's obligations under the Agreements or Ancillary Documents (as defined herein) that such party is not a signatory.

17690867\V-3

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:**

A.     **Jurisdiction and Venue.** This Court has jurisdiction over the Motion and the transactions contemplated therein (the "Transactions"), including but not limited to (i) the sale of substantially all of the Purchased Assets free and clear of all liens, claims, encumbrances and interests and (ii) the Store Closing Sales of the Non-Continuing Stores, under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.     **Statutory Predicates.** The statutory predicates for the relief sought in the Motion are sections 105(a), 363, 365 and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 6003, 6004, 6006 and 9014 and the applicable Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

C.     **Sale Notice.** As evidenced by the affidavits of service filed with this Court and based upon the representations of counsel at the Sale Approval Hearing and as approved under the Procedures Order: (i) due, proper, timely, adequate and sufficient notice of the Motion, the Auction, the Sale Approval Hearing and the Transactions contemplated therein has been provided to all parties in interest, in light of the circumstances of the Debtors and the depreciating nature of the Purchased Assets and the Disposable Assets (together, the "Assets"); (ii) such notice was and is good, sufficient and appropriate under the circumstances of the Debtors' chapter 11 cases and was provided in accordance with sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006 and 9007 and the Local Rules; and (iii) no other or further notice of the Motion, the Auction, the Sale Approval Hearing, the Store Closing Sales, the Transactions contemplated therein or of the entry of this Sale Order is necessary or shall be required.

4

D.    **Cure Notices.**  Cure notices of assignment (the "Cure Notices") and cure amounts (the "Cure Amounts") have been provided to all of the counterparties to executory contracts and unexpired leases of personal property (the "Contracts"), as well as to all of the counterparties to unexpired leases of non-residential real property (the "Real Property Leases").  Such Cure Notices were adequate and sufficient for the assumption and assignment of Contracts and Real Property Leases which may be designated by the Purchaser all in accordance with and as provided by the Procedures Order.

E.    **Opportunity To Object.**  A reasonable opportunity to object and to be heard with respect to the sale of the Purchased Assets, the assumption and assignment of the Contracts and Real Property Leases and the defaults and Cure Amounts related thereto, the Store Closing Sales, if any, the Motion and the relief requested therein, the Auction, the Agreements and the entry of this Sale Order has been given to all interested persons and entities, including, without limitation, the following:  (a) the United States Trustee for the District of Delaware; (b) counsel to Bank of America, N.A. as pre- and postpetition secured lender (the "Lender"); (c) counsel to the Official Committee of Unsecured Creditors (the "Committee"); (d) counsel for the indenture trustee for the 10.38% senior notes due 2010; (e) the creditors listed on the Debtors' consolidated list of 20 largest unsecured creditors, as filed with the chapter 11 petitions; (f) counsel to the Stalking Horse Bidder; (g) all parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors; (h) each of the Debtors' landlords and each of the notice parties identified in the Real Property Leases, to the extent possible; (i) the National Association of Attorneys General; (j) the State Attorney General's offices (upon (1) Chief or Director of the Consumer Protection Division or Bureau; and (2) Chief or Director of the Bankruptcy Division or Bureau) and State Consumer Protection Agency for each State where a store or distribution

center is located; (k) various federal, state, county and city tax and regulatory authorities; (l) all entities known to have expressed an interest in a transaction with respect to the Assets or that has been indentified by the Debtors or their advisors as a potential purchaser of the Assets; and (m) all parties requesting notice pursuant to Bankruptcy Rule 2002.

F.      **Auction.** Potential bidders had the full and fair opportunity to submit bids and participate in the Auction on the terms set forth in the Procedures Order. The Auction was conducted fairly and in good faith, without collusion and in accordance with the Procedures Order. At the Auction, the Purchaser was selected as the Successful Bidder. The Agreements constitute the highest and best offer for the Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Agreements constitute the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtors' business judgment.

G.      **Purchased Assets.** The Purchased Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. The Debtors have all right, title, and interest in the Assets required to transfer and convey the Purchased Assets as contemplated by the Purchase Agreement. The Transactions, viewed as a whole with the transfer of avoidance actions related thereto, will provide a greater benefit to the Debtors, their estates, and their creditors than would the prosecution of the transferred causes of action in the absence of the Transactions.

H.      **Agency Agreement.** Effective September 21, 2010, the Debtors and the Agent entered into the Agency Agreement. The Agency Agreement authorizes the grant of a license by the Debtors to the Agent, granting the Agent the right, at its election and in its discretion, to conduct Store Closing Sales at each of the Non-Continuing Stores with such sales to be (A) for

6

the sale account and benefit of the Purchaser in the manner set forth in the Purchase Agreement, (B) completed by the Agent no later than one hundred twenty (120) days after the closing of the Transactions (the "Closing") and (C) conducted in accordance with procedures reasonably satisfactory to the Agent and Debtors and consistent with such procedures as are customarily approved by this Court. The Agent's rights, duties and obligations under the Agency Agreement are as modified by the Purchase Agreement and in the event of any conflict between the terms of the Agency Agreement and the terms of the Purchase Agreement, the terms of the Purchase Agreement shall control.

I. **Business Justification.** The Debtors have demonstrated both (i) good, sufficient and sound business purposes and justifications for, and (ii) compelling circumstances to, consummate the Transactions contemplated by the Agreements other than in the ordinary course of business under section 363(b) of the Bankruptcy Code and before, and outside of, a plan of reorganization, and such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors. Such business reasons include, but are not limited to, the facts that: (i) there is substantial risk of depreciation of the value of the Assets if the sale is not consummated quickly and the Store Closing Sales, if any, are not allowed to proceed in accordance with the Sale Guidelines and the procedures set forth herein; (ii) the Agreements constitute the highest or best offer for the Assets; (iii) the Purchase Agreement and the Closing will present the best opportunity to realize the value of the Debtors on a going concern basis and avoid decline and devaluation of the Debtors' businesses; and (iv) unless the sale is concluded expeditiously as provided for in the Motion and pursuant to the Purchase Agreement, potential creditor recoveries may be substantially diminished. Time is of the essence in consummating the Agreements.

7

(A)     The Debtors and their professionals marketed the Assets to all potential purchasers, both before and during their chapter 11 cases, as set forth in the Motion and in accordance with the Procedures Order.  The bidding and Auction process set forth in the Procedures Order afforded a full and fair opportunity for any entity to make a higher or otherwise better offer to purchase the Assets.  Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Assets.

(B)     No other person or entity or group of persons or entities has offered to purchase the Assets for an amount that would give equal or greater economic value to the Debtors than the value being provided by the Purchaser pursuant to the Agreements.  Among other things, the Transactions are the best alternative available to the Debtors to maximize the return to their creditors and limit the losses to counterparties to Contracts and Real Property Leases.  Approval of the Motion, the Agreements, the Store Closing Sales and the Sale Guidelines by this Court on the terms of this Sale Order is in the best interests of the Debtors, their creditors and all other parties in interest and is the reasonable exercise of the Debtors' sound business judgment consistent with their fiduciary duties.  No alternative to the Transactions exists that would provide a greater value to the Debtors, their creditors, or other parties in interest.

J.     **Sale Order Required by the Purchaser.**  Entry of an order approving the Agreements, the Store Closing Sales, and the Sale Guidelines, and all the provisions thereof, on the terms requested in the Motion and set forth in the form and substance of this Sale Order, is a necessary and appropriate condition precedent to the Purchaser's and Agent's consummation of the Transactions.  The Debtors' ability to obtain the accommodations extended to them by the Purchaser and Agent under the Agreements is vital to the Debtors' estates and their creditors, so

that the Debtors may maximize the value for their estates. The Debtors and their estates have benefited, and will continue to benefit, from the accommodations provided and to be provided under the Agreements. Without the relief contained in this Sale Order, the Debtors' estates will be immediately and irreparably harmed. Immediate assumption of the Agreements is therefore justified pursuant to section 365 of the Bankruptcy Code and approval of the sale of the Purchased Assets in accordance with the Purchase Agreement is justified pursuant to section 363 of the Bankruptcy Code.

K.    **Consideration.** The total consideration provided by the Agreements is the highest and best offer received by the Debtors, and the consideration thereunder constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession thereof or the District of Columbia.

L.    **Arm's-Length.** The Agreements and other documents and instruments related to and connected with the Transactions (collectively, the "Ancillary Documents") and the consummation thereof were negotiated, proposed and entered into by the Debtors, the Purchaser and the Agent without collusion, in good faith and from arm's-length bargaining positions. Neither the Purchaser, the Agent, other than Trimaran (as defined below), nor any of their affiliates, partners, principals, or shareholders or their respective representatives is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code. Neither the Debtors, the Purchaser, the Agent or their respective affiliates, partners, principals, or shareholders or their representatives, has engaged in any conduct that would cause or permit the Agreements or the Ancillary Documents and the consummation thereof to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith

or in any improper or collusive manner with any person. The terms and conditions of the Agreements and the Ancillary Documents and the consummation thereof, and the Transactions themselves, including without limitation the consideration provided in respect thereof, are fair and reasonable, and the Transactions are not avoidable and shall not be avoided under section 363(n) of the Bankruptcy Code.

M. **Good Faith Purchaser.** The Purchaser and the Agent and their respective affiliates, partners, principals, shareholders and representatives have proceeded in good faith and without collusion in all respects in connection with this proceeding. Such persons are therefore entitled to all of the benefits and protections under section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transactions shall not affect the validity of the Transactions (including, without limitation, the Ancillary Documents). The Agreements were negotiated in good faith and at arm's length between the Debtors and the Purchaser, without collusion or fraud. Neither the Debtors, the Purchaser nor the Agent have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code to the Agreements or to the consummation of the Transactions contemplated thereby, including, but not limited to, the grant of a security interest to the Agent. No stay pending appeal of this Sale Order has been requested, and the stay contained in Bankruptcy Rule 6004(h) has been and hereby is expressly and irrevocably waived as set forth below.

N. **Corporate Authority.** Subject to the entry of this Sale Order, the Debtors (i) have full corporate power and authority to perform all of their obligations under the Agreements and the Ancillary Documents and the consummation thereof, and the Debtors' prior execution and delivery of, and performance of obligations under, the Agreements and the Ancillary

10

Documents is hereby ratified, (ii) have all of the corporate power and authority necessary to consummate the Transactions, (iii) have taken all corporate action necessary to authorize, approve, execute and deliver the Agreements and the Ancillary Documents and the consummation thereof and the Transactions themselves, and (iv) no consents or approvals are required to consummate Transactions or otherwise perform obligations under the Agreements or the Ancillary Documents, except for the closing conditions expressly agreed to therein. Any Store Closing Sales effectuated pursuant to the Agency Agreement shall be conducted free and clear of all Interests (as defined below) against the Debtors or their estates, because in each case, one or more of the standards of section 363(f)(1) of the Bankruptcy Code have been satisfied.

O. **Cure/Adequate Assurance.** The process for assuming and assigning the Contracts and Real Property Leases is integral to the Purchase Agreement, does not constitute unfair discrimination, and is in the best interests of the Debtors and their estates, creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors. The Debtors have or will have as of the assumption and assignment of any Contract (as assumed, an "Assumed Contract") or Real Property Lease (as assumed, an "Assumed Real Property Lease") to the Purchaser: (i) to the extent necessary, cured or provided adequate assurance of cure, of any default existing prior to the Designation Deadline (as defined herein) with respect to the Assumed Contracts and Assumed Real Property Leases, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code; and (ii) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the Designation Deadline with respect to the Assumed Contracts and Assumed Real Property Leases. The Purchaser's promise to perform the obligations under the Assumed Contracts and Assumed Real Property

11

Leases after their assumption and assignment shall constitute adequate assurance of future performance within the meaning of sections 365(b)(l)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the counterparties to such Assumed Contracts and Assumed Real Property Leases.

P.     **Contract and Lease Assignments in Best Interests.**     The Debtors have demonstrated that assuming and assigning the Assumed Contracts and Assumed Real Property Leases in connection with the Transactions is an exercise of their sound business judgment, and that such assumption and assignment is in the best interests of the Debtors' estates, for the reasons set forth in the Motion and on the record at the Sale Approval Hearing, including, without limitation, because the assumption and assignment of the Assumed Contracts and Assumed Real Property Leases in connection with the Transactions will maintain the ongoing business of the Debtors, limit the losses of counterparties to Assumed Contracts and Assumed Real Property Leases, and maximize the distribution to creditors of the Debtors.

Q.     **Free and Clear.**     The transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer, and will vest at the Closing the Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all of the following (collectively, "Interests") liens, claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights of first refusal, rights of setoff or recoupment, or interests of any kind or nature (including, without limitation, all "claims" within the meaning of section 101(5) of the Bankruptcy Code) whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the

17690867\V-3

commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to: (i) those Interests that purport to give to any party a right or option to effect a setoff against or any forfeiture, modification or termination of the Debtors' interests in the Purchased Assets, or any similar rights, if any; (ii) those Interests arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, hypothecations, liens, judgments, demands, encumbrances, rights of first refusal or charges of any land or nature, if any; (iii) those Interests that are Excluded Liabilities set forth in the Purchase Agreement; and (iv) those Interests arising in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors, affiliates, or representatives including, but not limited to, Interests arising under any doctrines of successor liability or similar theories under applicable state or federal law or otherwise. For the avoidance of doubt, without limiting the effect of the foregoing, the assumption and assignment of any Assumed Contracts and Assumed Real Property Leases is free and clear of all Interests. All such Interests to attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoid ability, if any, as of the date hereof; provided, however, that nothing in this paragraph shall relieve the Purchaser of its obligations with respect to the payment of Cure Amounts hereunder and under the Purchase Agreement.

R. **Free and Clear Findings Required by the Purchaser.** The Purchaser would not have entered into the Purchase Agreement and would not have consummated the Transactions, thus adversely affecting the Debtors, their estates and their creditors, if the sale of the Purchased Assets to the Purchaser, and the assumption and assignment or transfer of the Assumed Contracts and Assumed Real Property Leases to the Purchaser, were not free and clear of all Interests of

13

any kind or nature whatsoever, as set forth in this Sale Order, or if the Purchaser would, or in the future could, be liable for any of the Interests. A sale of the Assets other than one free and clear of all Interests would adversely impact the Debtors' estates, and would yield substantially less value for the Debtors' estates, with less certainty than the sale contemplated by the Purchase Agreement. Therefore, the sale contemplated by the Purchase Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

S. **Satisfaction of Section 363(f) Standards.** The Debtors may sell the Purchased Assets, and the Agent may conduct the Store Closing Sales, if any, free and clear of any Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Interests who did not object to or who withdrew their objections to the Motion and the sale of the Assets, the Transactions or the Cure Notices are deemed to have consented to the Motion and sale and assignment of the Purchased Assets to the Purchaser and the Store Closing Sales pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests attach to the net proceeds ultimately attributable to the Assets against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, except for any security interests granted herein, which such Interests now have against the Assets or their proceeds, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

T. **No Fraudulent Transfer.** The Agreements were not entered into, and the Transactions will not be consummated, for the purpose of hindering, delaying or defrauding

14

creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law. Neither the Debtors, the Purchaser nor the Agent has entered into the Agreements or are consummating the Transactions with any fraudulent or otherwise improper purpose. The consideration that is set forth in the Agreements is at least reasonably equivalent value for the Assets and for the Transactions.

U. **Excluded Liabilities**. Except for the Assumed Liabilities set forth in the Purchase Agreement, neither the transfer of the Purchased Assets to the Purchaser under the Purchase Agreement nor the conducting of the Store Closing Sales under the Agency Agreement shall result in either the Purchaser or the Agent having any liability or responsibility for, or any Assets being recourse for, (i) any Interest asserted against the Debtors or against an insider of Debtors or against any of the Assets or any other assets of the Debtors, or (ii) the satisfaction in any manner, whether at law or in equity, whether by payment, setoff, recoupment, or otherwise, directly or indirectly, and whether from the Assets or otherwise, of any Interest or Excluded Liability, or (iii) otherwise to third parties or the Debtors, except, with respect to the Debtors, as is expressly set forth in the Agreements. The Debtors will release and forever discharge the Purchaser and the Agent and their successors and assigns from any and all claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any land, character or nature whatsoever, known or unknown, fixed or contingent, relating to the sale and assignment of the Purchased Assets, except for the Assumed Liabilities and the other obligations under the Agreements.

V. **No Successor Liability**. Without limiting the effect or scope of the foregoing, neither the transfer of the Purchased Assets from the Debtors to the Purchaser nor any of the

17690867\V-3

Transactions shall or will subject the Purchaser or the Agent or either of their affiliates, successors or assigns or respective properties (including the Assets) to any liability for Interests against the Debtors or the Debtors' Interests in such Assets by reason of such transfer or otherwise under the laws of the United States or any state, territory, possession thereof, or the District of Columbia applicable to such Transaction, including, without limitation, any successor liability or similar theories. The Transactions contemplated by the Agreements do not amount to a consolidation, merger or *de facto* merger of the Purchaser, the Agent and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser, the Agent and the Debtors, there is no common identity among the Debtors and the Purchaser on the one hand, or among the Debtors and the Agent on the other, neither the Purchaser nor the Agent is a mere continuation of the Debtors or their estates, and neither the Purchaser nor the Agent constitutes a successor to the Debtors or their estates. For the avoidance of doubt, notwithstanding the consummation of the Transactions and the employment by the Purchaser of certain persons previously employed by the Debtors, neither the Purchaser nor the Agent or the use by Agent of persons currently or formerly employed by the Debtors shall have any obligations or liabilities to any employee of the Debtors or in respect of any employee benefits owing to any employee of the Debtors by the Debtors or by any plan or program administered by the Debtors or for the benefit of the Debtors' employees, and any obligations of the Purchaser or the Agent to any such person shall be limited to (i) those obligations expressly agreed by the Purchaser with such person on and following the later of the Closing and the date, if any, that such person first becomes employed by the Purchaser, and (ii) those obligations explicitly assumed by the Purchaser under the Purchase Agreement or the Agent under the Agency Agreement.

16

W. **Prompt Consummation.** The Transactions must be approved by the Court and consummated promptly in order to preserve the viability of the business subject to the sale as a going concern, and to thereby maximize the value of the Debtors' estates, for the reasons set forth in the Motion and on the record at the Sale Approval Hearing. For those reasons, time is of the essence in consummating both the sale and the Store Closing Sales. Accordingly, there is cause to waive the stay contemplated by Bankruptcy Rule 6004 with regards to the transactions contemplated by this Sale Order.

X. **Modifications to Purchased Assets, Assumed Contracts and Assumed Real Property Leases.** Given the unique circumstances of the Debtors' chapter 11 cases, including the need to rapidly stabilize the Debtors' business, the Debtors and the Purchaser have agreed that the Purchaser shall maintain certain rights to modify the list of the Assumed Contracts and Assumed Real Property Leases, after the date of this Sale Order and up to the applicable Designation Deadline as set forth in Section 2.5 of the Purchase Agreement. Such modification rights include but are not limited to the right of the Purchaser, prior to the applicable Designation Deadline, to designate a Contract or Real Property Lease not previously assumed for assumption by the Debtors and assignment to the Purchaser. The Purchaser would not have agreed to the Transactions without the rights set forth in Section 7.11 of the Purchase Agreement, which rights do not affect the purchase price. The notice and opportunity to object provided to counterparties to Assumed Contracts and Assumed Real Property Leases and to other parties in interest, as set forth in the Procedures Order, fairly and reasonably protects any rights that such counterparties and other parties in interest may have with respect to the Contracts and Real Property Leases pursuant to an exercise by the Purchaser of such rights.

17

Y.    **Assignment To Substitute Purchaser.**  In order to allow for the assumption and assignment of any Assumed Contracts and Assumed Real Property Leases under the terms of the Purchase Agreement, the Purchaser shall have the right, prior to the applicable Designation Deadline, to direct the Debtors to assign prior to the applicable Designation Deadline any Assumed Contract(s) and Assumed Real Property Lease(s) to one or more Buyer Designee (as such term is used in the Purchase Agreement). In the event that the Purchaser designates any Buyer Designee to acquire any Contract(s) or Real Property Lease(s), unless the context requires otherwise, any reference to the Purchaser in this Sale Order or the Purchase Agreement shall be deemed to be a reference to the Purchaser and/or such Buyer Designee, as applicable.

Z.    **Sale in Best Interests.**  Good and sufficient reasons for approval of the Agreements, and the Transactions have been articulated to the Court in the Motion and on the record at the Sale Approval Hearing, and the relief requested in the Motion and set forth in this Sale Order is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.    **Motion Is Granted.**  The Motion and the relief requested therein is **GRANTED** and **APPROVED** as set forth herein.

2.    **Objections Overruled.**  The Filed Objections, other than Objections to Cure Amounts, and any other objections to the entry of this Sale Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice. No appeal, motion to reconsider, or similar pleading has been filed with respect to the

Procedures Order, and the Procedures Order is a final order of the Bankruptcy Court, has not been vacated, withdrawn, rescinded, or amended, and remains in full force and effect.

3. **Approval.** The Agreements and the Ancillary Documents and the consummation thereof, and all of the terms and conditions thereto, including, but not limited to, the Sale Guidelines, are hereby approved. Pursuant to section 365 of the Bankruptcy Code, assumption by the Debtors of the Agreements is hereby directed, authorized and approved as a valid exercise of the Debtors' business judgment. Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors are authorized to continue performance under and make all payments required by the Agreements as and when due thereunder without further order of this Court. The Debtors, the Purchaser, the Agent and each of their respective officers, employees and agents be, and they hereby are authorized to: (i) execute the Agreements and the Ancillary Documents that may be reasonably necessary or appropriate to implement the Agreements, and any prior execution of such agreements, documents, and instruments, including the Ancillary Documents, is hereby ratified; (ii) perform all obligations under the Agreements and the Ancillary Documents and consummate each of the foregoing, including but not limited to deeds, assignments and other instruments of transfer, and consummate the Transactions, and any prior performance of such obligations and any prior consummation of such Transactions is hereby ratified; (iii) undertake the process of assuming and assigning the Contracts and the Real Property Leases to the Purchaser under the Procedures Order and this Sale Order; and (iv) take all other and further actions as may be reasonably necessary to consummate and implement the Transactions and perform all obligations under the Agreements and the Ancillary Documents and the consummation thereof, without any further corporate action or orders of the Bankruptcy Court. Neither the Purchaser nor the Agent shall have any obligation to proceed with the Closing under

19

the Agreements generally until all conditions precedent to their obligations to do so have been met, satisfied or waived.

4. **Valid Transfer.** As of the Closing, the consummation of the Transactions shall effect a legal, valid, enforceable and effective sale and transfer of the Assets, and shall be conducted free and clear of all Interests of any kind whatsoever. The Agreements and the Ancillary Documents and the consummation thereof, and the Transactions themselves shall be enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors, any successor trustee appointed with respect thereto, and each other person and entity.

5. **Free and Clear.** Except as expressly provided for in the Agreements or this Sale Order, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Debtors are authorized and directed to transfer the Purchased Assets to the Purchaser and the Purchaser shall take title to and possession of the Purchased Assets, upon the Closing, free and clear of all Interests of any kind or name whatsoever, with all such Interests to attach to the proceeds ultimately attributable to the Assets against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the Assets or their proceeds, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto. The provisions of this Sale Order authorizing the sale and assignment of the Assets free and clear of Interests shall be self-executing, and neither the Debtors, the Purchaser nor the Agent shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Sale Order. To the extent the Agent conducts Store Closing Sales, if any, in violation of any provision of any of the Debtors' Real Property Leases, all of the Debtors' Landlords (as defined below) are directed to

20

accept this Sale Order as binding authority authorizing the Debtors and the Agent to conduct the Store Closing Sales in accordance with the Agreements, the Sale Guidelines and this Sale Order.

6. **Injunction.** Except as expressly permitted by the Purchase Agreement as to Assumed Liabilities, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, contract counterparties, customers, landlords, licensors, employees, litigation claimants and other persons, holding Interests or claims of any land or nature whatsoever against or in the Debtors or the Debtors' interests in the Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, the operation of the Debtors' businesses before the Closing or the transfer of the Debtors' interests in the Purchased Assets to the Purchaser, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing Interests against the Purchaser, the Agent, either of their property, successors and assigns, or any of their affiliates, partners, principals, or shareholders or the interests of the Debtors in such Assets. Following the Closing, no holder of an Interest against the Debtors shall interfere with the Purchaser's title to or use and enjoyment of the Debtors' interests in the Assets or Agent's conduct of the Store Closing Sales based on or related to such Interests, and all such Interests, if any, shall be, and hereby are transferred and attached to the proceeds from the Transactions in the order of their priority, with the same validity, force and effect which they have against such Assets as of the Closing, subject

to any rights, claims and defenses that the Debtors' estates and Debtors, as applicable, may possess with respect thereto.

7. **General Assignment.** As of the Closing or, with respect to the Assumed Contracts and Assumed Real Property Leases on the date which the Debtor assigns such Assumed Contract or Assumed Real Property Lease to the Purchaser, as applicable, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Purchased Assets and/or a bill of sale or assignment transferring indefeasible title and interest in the Purchased Assets, including the Assumed Contracts and Assumed Real Property Leases, to the Purchaser. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Transactions and to reflect the effectiveness of the Transactions.

8. **No Successor Liability.** Neither the Purchaser, the Agent nor either of their affiliates, successors or assigns shall, as a result of the consummation of the Transactions: (i) be a successor to the Debtors or the Debtors' estates; (ii) have, *de facto* or otherwise, merged or consolidated with or into the Debtors or the Debtors' estates; or (iii) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors. Neither the Agent nor, except with respect to the Assumed Liabilities, the Purchaser, shall assume, or be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law. Except for the Assumed Liabilities, the transfer of the Purchased Assets to the Purchaser under the Purchase Agreement shall not result in (i) the Purchaser, its affiliates, partners, principals or shareholders, or the Assets having any liability or responsibility for any Interest against the Debtors or against an insider of the

22

Debtors, (ii) the Purchaser, its affiliates, partners, principals or shareholders, or the Assets having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or Excluded Liability, or (iii) the Purchaser, its affiliates, partners, principals or shareholders, or the Assets, having any liability or responsibility to the Debtors except as is expressly set forth in the Agreements.

9. **Examples of No Successor Liability.** Without limiting the generality, effect, or scope of the foregoing, as a result of and following the Closing of the Sale, the Purchaser, except as expressly assumed under the Purchase Agreement, shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, federal, state or other tax liabilities, United States or foreign pension liabilities, or liabilities based on any theory of antitrust, environmental, labor or employment or benefits law, alter ego, veil piercing, escheat, continuity of enterprise, mere continuation, product line, *de facto* merger or substantial continuity, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities arising, accruing or payable under, out of, in connection with, or in any way relating to or calculated or determined with respect to or based in whole or in any part upon the operation of the Assets prior to the Closing, or any taxes in connection with, or in any way relating to the cancellation of debt of the Debtors or their affiliates. For the avoidance of doubt, notwithstanding the consummation of the Transactions and the employment by the Purchaser of certain persons previously employed by the Debtors, the

Purchaser shall not have any obligations or liabilities to any employee of the Debtors or in respect of any employee benefits owing to or on behalf of any employee of the Debtors (except to the extent the Purchaser has expressly agreed to pay or assume certain employee benefits to designated employees in the Purchase Agreement or other Transaction documents), or with respect to any plan or program administered by the Debtors or any other person or entity or administered for the benefit of the Debtors' employees, and any obligations of the Purchaser to any such person shall be limited to those obligations agreed to by the Purchaser with such person, if any, on and following the later of the Closing and the date, if any, that such person first becomes employed by the Purchaser. In the event that the Purchaser elects to assume any liability related to the Debtors' employees, the Purchaser shall not by reason of any such election be deemed to have assumed any other liabilities or to be a successor for any other purpose.

10.     **Assumption and Assignment**. Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the (i) Debtors' assumption and assignment to the Purchaser of those Contracts and Real Property Leases designated by Purchaser on or prior to Closing as Assumed Contracts and Assumed Real Property Leases and the Purchaser's acceptance of such assignment on the terms set forth in the Purchase Agreement, the Motion and the Procedures Order; (ii) the Debtors' rejection of those Contracts and Real Property Leases designated by Purchaser as rejected (as applicable, the "Rejected Contracts" and the "Rejected Real Property Leases"); and (iii) the Purchaser's ability to designate on or prior to the Designation Deadline (as defined below) previously undesignated Contracts and Real Property Leases as Assumed Contracts or Assumed Real Property Leases, are hereby approved subject to the terms set forth herein. The Assumed Contracts and Assumed Real Property Leases shall remain in full force and effect for the benefit of the Purchaser in accordance with their

respective terms, notwithstanding any provision in any such Assumed Contracts and Assumed Real Property Leases of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code that prohibits, restricts, or conditions such assignment, transfer or sublease. Except as set forth herein, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assumed Contracts and Assumed Real Property Leases arising after assignment to the Purchaser. The Debtors are hereby authorized to execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign or transfer the Assumed Contracts and Assumed Real Property Leases to the Purchaser at or prior to the Designation Deadline (as defined below). Notwithstanding anything herein to the contrary, to resolve the objections filed by Connecticut General Life Insurance Company ("CGLIC"), Debtors shall, pursuant to section 365(a) and (f) of the Bankruptcy Code, prior to Closing: (i) assume and assign the Administrative Services Only Agreement with CGLIC and the Stop Loss Policy with CGLIC (jointly "Agreements") to Purchaser; and (ii) pay or cause to be paid to CGLIC the sum of $96,231.75 representing fees and premiums due under the Agreements through October 31, 2010.

11.    Within two (2) business days of the Closing, the Debtors shall file with the Court a list of Assumed Contracts and Assumed Real Property Leases that were assumed by the Debtors and assigned to Purchaser at Closing.

12.    **Designation Deadline**. The designation deadline shall be 5:00 p.m. (prevailing Eastern time) on the date that is 120 days from the Closing (the "Designation Deadline"). Subject to the terms of the Purchase Agreement and subject to section 365(d)(4) of the Bankruptcy Code, the Purchaser may designate on or prior to the Designation Deadline, by

17690867\V-3

written notice to the Debtors, which of the Contracts or Real Property Leases are to be treated as Assumed Contracts or Assumed Real Property Leases (such notice, the "Assumption Notice").

13.    **Cure Notices.**  Following entry of the Procedures Order, the Debtors served the Cure Notice by first class mail on all non-debtor counterparties to Contracts and Real Property Leases.  The Cure Notice informed each recipient that its respective Contract and/or Real Property Lease may be designated by the Purchaser as either assumed or rejected, and the timing and procedures relating to such designation, and, to the extent applicable (i) the title of Contract or Real Property Lease, (ii) the name of the counterparty to the Contract or Real Property Lease, (iii) the Cure Amounts, (iv) the identity of the Purchaser, and (v) the deadline by which any such Contract or Real Property Lease counterparty needed to file an objection (the "Objection") to the proposed assumption and assignment and/or cure, and the procedures relating thereto.

14.    **Cure Notice Objections.**  Any Objections to the Cure Notices that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, (the "Cure Amount Objection(s)") which were timely filed and served prior to the date hereof, which are not otherwise resolved by this Sale Order or by separate agreement between such objecting party and the Purchaser, shall be heard before this Court on __1/13__, 2018 at __10:00 a.__m. ~or such earlier date that the parties agree upon (prevailing Eastern time) to resolve such Cure Amount Objection(s).

15.    **Determination of Cure Amounts.** Except as provided in the Procedures Order or this Sale Order (including, but not limited to, the procedures provided in this Sale Order for addressing disputed Cure Amounts), the Cure Amounts set forth on the applicable Cure Notice shall constitute findings of the Bankruptcy Court and shall be final and binding on parties to such Contracts and Real Property Leases and their successors and designees upon the Closing and shall not be subject to further dispute or audit based on performance prior to the time of

assumption and assumption and assignment, irrespective of the terms and conditions of such Contracts and Real Property Leases. Each counterparty to an Assumed Contract or Assumed Real Property Lease, whether entered before or after the Petition Date, is hereby forever barred, estopped, and permanently enjoined from (i) asserting against the Purchaser or its Property (including without limitation the Purchased Assets), any default arising prior to or existing as of Closing, or any counterclaim, defense, recoupment, setoff or any other Interest asserted or assertable against the Debtors; and (ii) imposing or charging against the Purchaser or its affiliates, any accelerations, assignment fees, increases or any other fees as a result of the Debtors' assumption and assignment or assumption and sublease to the Purchaser of the Assumed Contract or Assumed Real Property Lease. To the extent that any counterparty was notified of Cure Amounts or defaults (or the absence thereof), in accordance with the Procedures Order, and failed to file an Objection to such Cure Amounts or defaults (or the absence thereof) with respect to an Assumed Contract or Assumed Real Property Lease, such counterparty is deemed to have consented to such Cure Amounts or defaults (or the absence thereof) and is deemed to have waived any right to assert or collect any Cure Amounts or enforce any defaults that may arise or have arisen prior to or as of the Designation Deadline. Where an Objection to the Cure Notice has been filed, the Cure Amounts for such Assumed Contract or Assumed Real Property Lease shall not be fixed by this Sale Order and shall be resolved either by agreement of the parties or by Order of the Court in accordance with Paragraphs 13 and 15 of this Sale Order. Notwithstanding anything to the contrary set forth herein, in the Motion, or in the Purchase Agreement, with respect to each Real Property Lease that is assigned to the Purchaser, entry of this Sale Order shall not impair the right of any non-Debtor counterparty to a Real Property Lease to assert against the Purchaser, and the Purchaser will assume to the extent applicable

17690867\V-3

under such Assumed Real Property Lease, (i) any amounts due as year-end adjustment and/or reconciliation charges without regard to whether those amounts accrued prior to or after the effective date of the assignment, including without limitation all Landlord percentage rents, (ii) any liabilities that arise under any such Assumed Real Property Lease that do not constitute defaults prior to the Designation Deadline, including without limitation any amounts billed in the ordinary course of business under the terms of the respective Assumed Real Property Lease, or (iii) the Debtors' obligation, if any, to indemnify a non-Debtor counterparty to such Assumed Real Property Lease; provided, however, that the Purchaser shall have whatever rights that the Debtors may have had to contest the amounts asserted by the non-Debtor counterparty to a Real Property Lease under the terms of the Real Property Lease.

16. **Payment of Cure Amounts.** The Purchaser shall pay undisputed Cure Amounts, or any undisputed portion with respect thereto, within five (5) business days of the assumption of such Assumed Contracts and Assumed Real Property Leases. The Purchaser shall pay any disputed portion of the Cure Amount as agreed to by the parties or as ultimately decided by this Court to be payable by the Purchaser within five (5) business days of such resolution. The Purchaser's obligation to pay the Cure Amounts and the Purchaser's performance of its obligations under the Assumed Contracts and Assumed Real Property Leases after the Designation Deadline shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1) and 365(f)(2)(B) of the Bankruptcy Code.

17. **Assumption and Assignment Procedures.** In the case of any Contract and Real Property Lease that the Debtors seek to assume and assign after the Closing Date pursuant to Section 2.5(b) of the Purchase Agreement, the Debtors shall file with the Court a written notice (an "Assumption Notice") of the Debtors' intent to assume and assign any Executory Contract or

Real Property Lease and will serve such Assumption Notice and via facsimile, electronic mail (provided that the Debtors have facsimile and/or electronic mail contract information) or overnight delivery on (i) each counter party or landlord and its counsel (if known) to any contract or lease to be assumed or assigned by the Debtors, (ii) any other interested parties with respect to such contract or lease, (iii) the U.S. Trustee, (iv) counsel to the Committee, (v) counsel to the Purchaser, (vi) counsel to the Lender, and (vii) counsel to the proposed assignee (the "Proposed Assignee").

18.     The Assumption Notice will set forth the following information, to the best of the Debtors' knowledge: (i) the street address of the real property that is the subject of any Real Property Lease that the Debtors seek to assume and assign or a description of the Executory Contract that the Debtors seek to assume and assign, (ii) the name and address of the affected counterparties or landlords (and their counsel, if known), (iii) a description of the deadlines and procedures for filing objections to the Assumption Notice (as set forth below), (iv) the name of the Proposed Assignee, (v) information with respect to the Proposed Assignee's proposed adequate assurance of future performance (and updated information, to the extent there is any, in the event that the Proposed Assignee is the Purchaser) and information regarding how a non-debtor party to an Executory Contract or Real Property Lease may obtain additional information regarding the Proposed Assignee, and (vi) updated Cure Amounts only in the event that the Debtors believe there have been additional defaults under the applicable Executory Contract or Real Property Lease since the date of the Cure Notice. The proposed order approving the assumption and assignment shall be attached to the Assumption Notice (the "Assumption Order").

17690867.V-3

19.     Should a party in interest object to the proposed assumption and assignment by the Debtors of an Executory Contract or Real Property Lease (or the Cure Amount with respect thereto), such party must file and serve a written objection so that such rejection is filed with this Court and actually received by the Debtors and the Assumption Notice Parties (as defined in and set forth in the Assumption Notice) no later than ten (10) days after the date that the Debtors served the Assumption Notice for the Executory Contract or Real Property Lease at issue.

20.     If no timely objection is filed and served with respect to the Assumption Notice, the Debtor shall file with the Court a certificate of no objection with the Assumption Order. The Assumption Order shall provide, *inter alia*, (1) that the assumption and assignment of such Executory Contract or Real Property Lease is approved, final and effective, pursuant to section 365 of the Bankruptcy Code as of the date of the Assumption Order and (2) the Proposed Assignee provided adequate assurance of future performance under the applicable Executory Contract or Real Property Lease in accordance with section 365(f)(2)(B), and, if applicable, section 365(b)(3).

21.     If a timely objection is properly filed and served on the Assumption Notice Parties in the manner specified above, unless the parties agree otherwise in writing, a hearing will be scheduled to consider that objection. If that objection is overruled by the Court or withdrawn, the assumption and assignment of the affected Executory Contract or Real Property Lease shall be deemed effective as of the date of the Assumption Order.

22.     **Rejection Procedures.** As set forth more fully in Section 2.5(b) of the Purchase Agreement, in the case of any Executory Contract or Real Property Lease that the Purchaser does not want to assume and assign, within two (2) business days following delivery of a notification by the Purchaser that an Executory Contract or Real Property Lease is designated for rejection,

the Debtors shall move to reject such Executory Contract or Real Property Lease. Additionally, in the event that the Purchaser has not provided a written designation to assume and assign or reject any Executory Contracts or Real Property Leases at least ten (10) business days prior to the Designation Deadline, the Debtors may move to reject such Executory Contracts and Real Property Leases as of the Designation Deadline. Accordingly, the Debtors will file with the Court a written notice (the "Rejection Notice") of the Debtors' intent to reject any contract or lease, and will serve the Rejection Notice via overnight delivery service upon the following parties (collectively, the "Rejection Notice Parties"): (i) the counterparties or landlords and their counsel (if known) affected by the Rejection Notice and any parties to any subleases, (ii) the U.S. Trustee, (iii) counsel to the Committee, (iv) counsel to the Purchaser, (v) counsel to the Lender, (vi) any other interested parties with respect to such contract or lease and (vii) any party known to have an interest in property which the Debtors have identified in the Rejection Notice as property to be abandoned pursuant to section 554 of the Bankruptcy Code. The affected contract or lease which is the subject of a Rejection Notice shall be deemed to be subject to a motion to reject such contract or lease pursuant to section 365 of the Bankruptcy Code.

23. The Rejection Notice will set forth the following information, to the best of the Debtors' knowledge: (i) the street address of the real property that is the subject of any Real Property Lease that the Debtors seek to reject or a description of the Executory Contract that the Debtors seek to reject, (ii) the name and address of the affected counterparties or landlords (and their counsel, if known), (iii) a description of the deadlines and procedures for filing objections to the Rejection Notice (as set forth below), and (iv) any property to be abandoned pursuant to section 554 of the Bankruptcy Code, in accordance with paragraph 27 of this Sale Order. The

31

proposed order approving the rejection shall be attached to the Rejection Notice (the "Rejection Order").

24.     Should a party in interest object to the proposed rejection by the Debtors of an Executory Contract or Real Property Lease, such party must file and serve a written objection so that such rejection is filed with this Court and actually received by the Debtors and the Rejection Notice Parties as set forth in the Rejection Notice no later than ten (10) days after the date that the Debtors served the Rejection Notice to reject the Executory Contract or Real Property Lease at issue.

25.     If no timely objection is filed and served with respect to the rejection of a contract or lease, the Debtor shall file with the Court a certificate of no objection with the Rejection Order. The Rejection Order shall provide, inter alia, that the rejection of such contract or lease shall become effective on the later of (i) ten (10) days from the date the applicable Rejection Notice was served on the affected counterparty or landlord (notwithstanding any extension of the objection deadline beyond such date pursuant to Bankruptcy Rule 9006), or (ii) if a Real Property Lease, the date that the Debtor vacated the premises, evidenced by actions such as turning over the keys or "key codes" to the affected landlord.

26.     If a timely objection is properly filed and served on the Rejection Notice Parties as specified above, unless the parties agree otherwise in writing, a hearing will be scheduled to consider that objection. If that objection is overruled by the Court or withdrawn, the rejection of the affected Executory Contract or Real Property Lease shall be deemed effective on the later of (i) ten (10) days from the date the applicable Rejection Notice was served on the affected counterparty or landlord, (ii) if a lease, the date that the Debtors vacated the premises to the affected landlord, evidenced by actions such as turning over keys or "key codes" to the affected

32

landlord or (iii) in the event that the objection was filed by a party other than an affected counterparty or landlord, such date as is ordered by this Court.

27. In connection with the rejection of a Real Property Lease, if the Debtors have deposited monies with a lessor as a security deposit or other arrangement, such lessor may not set off or recoup or otherwise use such deposit without the prior approval of the Court.

28. In connection with the rejection of a Real Property Lease, with respect to any personal property of the Debtors located at any of the premises subject to any Rejection Notice, the Debtors shall remove such property prior to the later of (i) the expiration of the period within which a party must file and serve a written objection to the Rejection Notice, and (ii) the date of rejection of the underlying Real Property Lease. If the Debtors determine that the property at a particular location has no value or the cost of removing the property exceeds the value of such property, the Debtors shall generally describe the property in the Rejection Notice and their intent to abandon such property. Absent a timely objection, the property will be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, where is, effective as of the date of the rejection of the underlying Real Property Lease. Upon abandonment, the landlord may dispose of such property without further notice or court order and free of liability for such action. The right of any party in interest to assert a claim against the Debtors' estate for costs associated with such abandoned property is fully preserved, provided that such claim must be made in accordance with the procedures established below for the filing of proofs of claim. The Debtors' rights to contest any such claims are fully preserved.

29. If an affected landlord or counterparty or any other party in interest (the "Rejection Claimant") asserts a claim or claims against the Debtor arising from the rejection of an Executory Contract or Real Property Lease, such Rejection Claimant shall submit a proof of

33

claim to Urban Brands Claims Processing Center, c/o BMC Group, Inc., P.O. Box 3020, Chanhassen, Minnesota 55317-3020, on or before the later of (i) the date that is 30 days after the effective date of rejection of the contract or Real Property Lease, or (ii) the bar date established by this Court for filing proofs of claim against the Debtors. If a Rejection Claimant does not timely file such proof of claim, such claimant shall be forever barred from asserting a claim for such rejection damages.

30. ***Ipso Facto* Clauses Ineffective.** Upon the Debtors' assignment of the Assumed Contracts and Assumed Real Property Leases to the Purchaser under the provisions of this Sale Order and Purchaser's payment of the Cure Amounts in accordance with this Sale Order and the Purchase Agreement, no default shall exist under any Assumed Contract or Assumed Real Property Lease and no counterparty to any such Assumed Contract or Assumed Real Property Lease shall be permitted to declare or enforce a default by the Debtor or the Purchaser thereunder or otherwise take action against the Purchaser as a result of any Debtor's financial condition, change in control, bankruptcy or failure to perform any of its obligations under the relevant Contract. Any provision in an Assumed Contract or Assumed Real Property Lease that prohibits or conditions the assignment or sublease of such Assumed Contract or Assumed Real Property Lease or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect solely with respect to the assumption and assignment of the Assumed Real Property Leases authorized by this Sale Order and that any such provisions will remain in the Assumed Real Property Leases and enforceable according to its terms on a going forward basis. The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any

17690867\V-3

Assumed Contract or Assumed Real Property Lease shall not be a waiver of such terms or conditions, or of the Debtors' and the Purchaser's rights to enforce every term and condition of the Assumed Contract or Assumed Real Property Lease.

31. **Extension Pursuant to Section 365(d)(4).** The Debtors' time to elect to assume or reject the Real Property Leases, which currently expires on the date that is 120 days from the Petition Date is hereby extended, pursuant to section 365(d)(4) of the Bankruptcy Code, through the date which is 210 days from the Petition Date. Such an extension is without prejudice to the rights of the Debtors to seek further extensions of the time to assume or reject the Real Property Leases with the consent of the affected lessors as contemplated by section 365(d)(4)(B)(ii) of the Bankruptcy Code.

32. **Binding Effect of Order.** This Sale Order shall be binding upon and shall govern the acts of all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets. The terms and provisions of the Agreements, the Ancillary Documents and the consummation thereof, the Transactions themselves, the Procedures Order, and this Sale Order shall be binding in all respects upon the Debtors, the Debtors' estates, all creditors thereof (whether known or unknown), all holders of equity interests in any of the Debtors, the Purchaser, and its respective affiliates, successors and assigns, and any and all third parties, notwithstanding

17690867\V-3

any subsequent appointment of any trustee of the Debtors under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

33. **Release of Interests.** This Sale Order (i) shall be effective as a determination that, on the Closing, all Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (ii) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets. On the Closing, the Debtors and persons holding an Interest in the Assets as of the Closing are authorized to execute such documents and take all other actions as may be reasonably necessary to release their Interests in the Assets, if any, as such Interests may have been recorded or may otherwise exist.

34. **Avoidance Actions.** The Debtors shall not pursue any litigation claims and causes of action (including causes of action under Chapter 5 of the Bankruptcy Code) (i) against landlords, vendors or other counterparties who are party to (or Affiliates of a party to) any Assumed Contract (as defined in the Agreements), Assumed Real Property Lease (as defined in the Agreements), or any purchase order with a supplier open as of the Closing Date for delivery of goods under such purchase order post-Closing, or (ii) against Transferred Employees (as defined in the Agreements), or any officer or employee retained by the Debtors or their

subsidiaries after Closing, or (iii) otherwise arising under or related to the Acquired Assets (as defined in the Agreements) (including, for the avoidance of doubt, all Assumed Contracts and the Assumed Real Property Leases), including in each of cases (i), (ii) and (iii) such causes of action arising under, or available pursuant to, the Bankruptcy Code other than the Retained Avoidance Actions (as defined in the Agreements).

35.     **Fees, Expenses and Other Obligations.** All obligations of the Debtors under the Agreements and any and all of the documents delivered by the Debtors in connection with the Agreements, including the Ancillary Documents, shall be paid in the manner provided in the Agreements without further order of this Court. All such obligations shall constitute allowed administrative claims in each of the Debtors' chapter 11 cases, with first priority administrative expense under section 507(a)(2) of the Bankruptcy Code. Until satisfied, all such obligations shall continue to have the protections provided in this Sale Order, and shall not be discharged, modified or otherwise affected by any reorganization plan for the Debtors, except by an express agreement with the Purchaser or the Agent, as applicable.

36.     **Proceeds.** Notwithstanding paragraph 64 of this Sale Order, until such time as the postpetition financing facility (the "DIP Loan") with Bank of America, N.A. (the "DIP Lender") is paid in full, payment of any cash of the Transactions payable to the Debtors or their estates will be paid by the Debtors to the DIP Lender within one (1) business day of the receipt thereof to be applied to the outstanding obligations under the DIP Loan. Notwithstanding the foregoing, all of the Purchased Assets sold to Purchaser shall be sold free and clear of any liens, claims or encumbrances. Except with respect to proceeds payable to either Purchaser, Agent or DIP Lender under the Agreements, Ancillary Documents or this Sale Order, any and all valid and perfected Interests in the Assets of the Debtors shall attach to any proceeds of such Assets

17690867\V·3

immediately upon receipt of such proceeds by the Debtors (or any party acting on any Debtors' behalf) in the order of priority, and with the same validity, force and effect which they now have against such Assets, subject to the rights of the Purchaser hereunder and any rights, claims and defenses the Debtors, the Debtors' estates or any trustee for any Debtor, as applicable, may possess with respect thereto, in addition to any limitations on the use of such proceeds pursuant to any provision of this Sale Order.

37.     **Store Operations.** The Purchaser shall be entitled to avail itself of any and all services related to the Non-Continuing Stores, with expenses relating thereto to be paid in accordance with the Agreements, including, but not limited to, all utilities, water, cleaning services, garbage removal, free of any interference from any entity or person, subject to compliance with this Sale Order. All Proceeds (as such term is defined in the Purchase Agreement) and all Inventory (as such term is defined in the Purchase Agreement) sold from the Non-Continuing Stores shall be the sole property of the Purchaser and constitute part of the Purchased Assets for all purposes, including under the Purchase Agreement, and shall be sold free and clear of any Interest which any person may assert against such Inventory or Proceeds. The Debtors and the Purchaser shall be authorized to take any and all actions as may be necessary or desirable to operate the Stores and to otherwise implement the Purchase Agreement and each of the transactions contemplated thereby subject to the limitations on actions by the Debtors set forth in the Agreements. Other than actions permitted by an Order of this Court, all utility providers, landlords, creditors and all persons acting for or on their behalf shall not interfere with or otherwise impede the Store operations, institute any action in any court (other than in this Court) or before any administrative body which in any way directly or indirectly interferes with or obstructs or otherwise impedes the Store operations. Notwithstanding anything

herein or in the Purchase Agreement to the contrary, with respect to any store for which the Agent conducts and concludes a store closing sale, all Inventory and all FF&E (as defined in the Agency Agreement) located at such store shall be deemed to remain the property of the applicable Selling Entity that is the tenant at such store, and all proceeds from the sale, disposition or liquidation of such Inventory and FF&E shall be deemed to be the property of the Buyer and, to the extent such proceeds are remitted to a Selling Entity, such Selling Entity shall hold such proceeds in trust for the Buyer and shall promptly deliver such proceeds to the Buyer.

38.     **Sales Guidelines.** The Sale Guidelines, attached hereto as **Schedule 1** to Exhibit B, are hereby approved and shall be deemed the "Sale Guidelines" as referred to in the Agency Agreement. The Debtors and the Agent shall abide by such Sale Guidelines. The Debtors and the Agent, as applicable, shall have the right to conduct the Store Closing Sales, if any, pursuant to the Sale Guidelines; provided, however, that all landlords of the Stores (collectively, the "Landlords") and Governmental Units (as defined in section 101(27) of the Bankruptcy Code) seeking to object to the relief provided for in this Sale Order as to approval of the Sale Guidelines, must file such objection and serve it upon the Notice Parties so as to be actually received on or before ten (10) days from entry of this Sale Order (the "Objection Deadline"). If no objection is timely filed and served, this paragraph of this Sale Order shall become final in all respects without further action or order of this Court. If an objection is timely filed and served and not otherwise resolved, this Court shall hold a hearing on __11/16__, 2010 at __3:00__ p.m. (prevailing Eastern time) to resolve such objection(s).

39.     Subject to the provisions of paragraph 40 of this Sale Order, the Agent's use, in conformity with the Sale Guidelines and the Order, of (i) sign walkers; (ii) interior store signage and banners; and (iii) exterior banners and signage (collectively, "Banner and Sign Walker

Advertising"), is authorized (subject to the terms and conditions of any side letter agreement between the Agent and a Landlord entered into in connection with the Store Closing Sales), notwithstanding any restrictive provision of any Lease, sublease or other agreement affecting or purporting to restrict such activity so long as such activity is undertaken in a safe, professional and non-deceptive manner. Any person who, after having received a copy of this Sale Order, and after having been specifically advised in writing of the provisions of this paragraph, continues to interfere with Banner and Sign Walker Advertising undertaken in compliance with this Sale Order, shall be liable to the Agent and/or the Debtors and affected Landlord(s) for any and all damages resulting from such continued interference.

40.     **Agent and Landlord Agreements.** The Agent and Landlords of the Stores are authorized to enter into agreements between themselves modifying the Sale Guidelines without further order of the Court provided that such agreements do not have a material adverse effect on the Debtors or their estates and do not result in a reduction of amounts due to the Debtors under the Agency Agreement. Any such side agreements shall control in the event of any inconsistencies between such agreements and the terms of the Sale Guidelines and this Sale Order. No such side agreements shall affect the rights of any Governmental Unit.

41.     **Compliance.** The Store Closing Sales shall not be exempt from, and the Agent shall be required to comply with, all laws of general applicability, including without limitation, public health and safety laws, and applicable criminal, traffic, tax, labor, employment, environmental, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"). Subject to the foregoing, the Debtors and the Agent be, and they hereby are, authorized to take such actions necessary and appropriate to implement the Agency Agreement and to conduct the Store Closing Sales without

40

the necessity of a further order of this Court as provided by the Agency Agreement, including, but not limited to, advertising the Store Closing Sales through the posting of signs (including the use of exterior banners at (i) non-enclosed mall Store locations; (ii) mall locations if the Store has a separate entrance from a parking lot and (iii) enclosed mall Stores to the extent the applicable Store entrance does not require entry into the enclosed mall common area, use of sign walkers and street signage, in accordance with the Agency Agreement and as otherwise provided in the Sale Guidelines).

42. The Store Closing Sales at the Stores shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any Lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closing Sales, the rejection of Real Property Leases, abandonment of assets or "going dark" provisions; provided, however, that nothing in this Sale Order shall impact any objection a Landlord may have to assumption, assignment or rejection of their respective Real Property Lease or to any proposed cure amount or rejection damages claim in association with such assumption, assignment or rejection.

43. No bulk sale or similar law shall prohibit the Debtors or the Agent from taking action contemplated by the Agency Agreement.

44. Provided that the Store Closing Sales are conducted in accordance with the terms of this Sale Order, the Agency Agreement, and the Sale Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors, their Landlords, and the Agent are authorized to proceed with the Store Closing Sales and are presumed to be in compliance with the requirements of any GOB Law (as defined below) and are authorized to conduct the Store Closing Sales in accordance with the terms of this

41

Sale Order, the Agency Agreement, and the Sale Guidelines, without further showing of compliance with any such GOB Law. For purposes of this Sale Order, a "GOB Law" shall mean any federal, state or local statute or ordinance, Real Property Lease provision or licensing requirement directed solely at regulating store closing, "going out of business," liquidation, bankruptcy or auction sales (collectively, the "GOB Sales"), such as laws restricting safe, professional and non-deceptive, customary advertising of GOB Sales such as signs, banners, postage of signage, and use of sign walkers, and including ordinances establishing licensing or permitting requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply to GOB Sales (collectively, the "GOB Laws").

(A)     Nothing in this Sale Order shall be deemed to bar any Governmental Units from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or the Agent's right to assert that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Sale Order or otherwise. To the extent reasonably practicable, each applicable Governmental Unit shall provide the Debtors and the Agent and any affected Landlord with reasonable notice and opportunity to cure any alleged violation of any applicable law or regulation prior to instituting formal administrative or judicial proceedings. No party waives any rights to argue any position with respect to whether the conduct was in compliance with this Sale Order and/or any applicable law, or that enforcement of any such law is preempted by the Bankruptcy Code. In the event that the Debtors and the Agent are unable to have such Governmental Unit withdraw any citations that may be issued by a Governmental Unit against a Landlord, then such Landlord shall have the right to file a claim for its reasonable costs and expenses, including attorneys fees, incurred in connection with such

citation, which, if allowed, shall be paid by in accordance with the terms of the Agency Agreement and the Purchase Agreement.

45. **Interference with Store Closing Sales Enjoined.** Except as to Governmental Units (as to which this paragraph shall not apply), and except as expressly provided for herein or in the Sale Guidelines: no person or entity, (i) served with a copy of the Motion; or (ii) served with a copy of this Sale Order who does not object pursuant to the provisions of this Sale Order, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closing Sales, or the advertising and promotion (including the posting of signs and use of sign walkers) of such Store Closing Sales, and all such parties and persons of every nature and description, including Landlords and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, or otherwise impeding the conduct of the Store Closing Sales and/or (b) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtors, the Agent, or the Landlords, that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales and/or seek to recover damages for breach(es) of covenants or provisions in any Real Property Lease or sublease based upon any relief authorized herein.

46. **Service.** The Debtors shall serve copies of this Sale Order within five (5) business days, by first-class mail, upon (i) the state Attorney General's offices (upon (x) Chief or Director of the Consumer Protection Division or Bureau; and (y) Chief or Director of the Bankruptcy Division or Bureau) and state Consumer Protection Agency for each state where a Store is located, and (ii) the local mayor or similar representative of each village, or city official,

and the county or parish where a Store is located, addressed to the attention of the municipal, city or county attorney, in each case to the consumer protection division.

47.    **Resolution of Disputes.** If there is a dispute as to whether the general conduct of the Store Closing Sales in accordance with this Sale Order, the Agency Agreement and the Sale Guidelines would violate a GOB Law and should be limited or barred (a "Reserved Dispute"), resolution of such Reserved Dispute will take place before this Court, as provided in this paragraph. Any time before the fifteen (15th) day following the service of this Sale Order as provided for above, any Governmental Unit may assert a Reserved Dispute by sending a notice explaining the nature of the dispute to counsel to the Debtors, counsel to the Agent and counsel to the Committee. If the Debtors and the objecting Governmental Unit, (as the case may be, the "Objecting Party") are unable to resolve the Reserved Dispute within fifteen (15) days of receipt of the Objecting Parties' notice, either party may file a motion with the Court requesting a resolution of the dispute (a "Dispute Resolution Motion"). Any issues relating to a Reserved Dispute shall not affect the finality of this Sale Order or limit or interfere with the conduct of the Store Closing Sales prior to any ruling by this Court on such Reserved Dispute.

48.    If such a Dispute Resolution Motion is timely filed, the Debtors and the Agent shall each be entitled to assert that the provisions in question are preempted by the Bankruptcy Code and/or that neither the terms of this Sale Order nor the conduct of the Store Closing Sales violates the GOB Law. By timely filing a Dispute Resolution Motion, all Governmental Units shall be entitled to assert any jurisdictional, procedural or substantive argument that it might heretofore have been entitled to raise. Any such Dispute Resolution Motion will also be served upon any affected Landlord.

17690867\V-3

49.     Except as otherwise provided herein, nothing herein shall be deemed to constitute a ruling on any issue that might be raised in a Dispute Resolution Motion, including whether any non-bankruptcy state law, regulation or rule applicable to the Store Closing Sales is preempted by the Bankruptcy Code nor as to whether the automatic stay applies nor is this Sale Order a ruling with respect to whether sovereign immunity applies. If at any time a dispute arises between the Debtors and/or the Agent and a Governmental Unit as to whether a particular law is a GOB Law and subject to any provisions contained in this Sale Order related to GOB Laws, then any party to that dispute may utilize the provisions of this Sale Order by sending a notice to the other party and proceeding thereunder in accordance therewith. Any determination with respect to whether a particular law is a GOB Law shall be made *de novo* in accordance with the definition in this Sale Order. Notwithstanding anything to the contrary herein, to the extent that disputes arise during the course of the Store Closing Sales with respect to laws regulating the use of Banner and Sign Walker Advertising and the Debtors and/or Agent are unable to resolve the matter consensually with the Governmental Unit, either party may request an immediate telephonic hearing with this Court and, subject to the Court's calendar and to the extent practicable, such hearing shall be scheduled initially within two (2) business days of the request (which shall not preclude the scheduling of additional hearings for the presentment of evidence or argument, as may be necessary).

50.     **Latent Defects.** All state and federal laws relating to implied warrants for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales." The Agent shall accept return of any goods that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within the

45

same period proscribed by the Debtors' return policy that was in effect when the merchandise was purchased (except with respect to items purchased during the Store Closing Sales, in which case such items must be returned within fourteen (14) days following the purchase date), the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect. The Debtors' employees and the Agent's personnel shall be made aware of this policy and consumers shall be so informed of the policy. The Debtors shall reimburse the Agent for any documented refund attributable to a "latent" defect as part of the weekly sale reconciliation process under Section 4.2 of the Agency Agreement.

51. **Gift Certificates.** Gift certificates, gift cards and Merchandise credits issued by the Debtors prior to the Sale Commencement Date (as defined in the Agency Agreement) shall be accepted and honored by the Agent during the Sale Term.

52. **Returns.** Notwithstanding Section 8.5 of the Agency Agreement, returns of Merchandise purchased prior to the Sale Commencement Date will be accepted at the Stores provided that such return is accompanied by the original store receipt and is otherwise in compliance with the Debtors' return and price adjustment policy in effect as of the date such item was purchased.

53. **Return of Assets Following Sale Term.** All assets of the Debtors used by the Agent in the conduct of the Store Closing Sales, including, but not limited to, unsold FF&E, shall be returned by the Agent to the Debtors or left at the Stores premises at the end of the Sale Term to the extent the same have not been used in the conduct of the Store Closing Sales or have not been otherwise disposed of through no fault of the Purchaser.

54. **No Material Modifications.** The Agreements and the Ancillary Documents may be modified, amended or supplemented in a writing signed by all of the parties thereto, and in

accordance with the terms thereof, without further order of the Court, provided, however, that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates and has been agreed to between each of the signatories to the Agreement or Ancillary Document. Any material modification, amendment, or supplement to the Agreements and the Ancillary Documents must be approved by Order of the Bankruptcy Court following a motion on notice to all interested parties.

55. **Subsequent Orders and Plan Provisions.** Nothing contained in any subsequent order of this Court or any court of competent jurisdiction in these or other chapter 11 cases (including without limitation, an order authorizing the sale of assets pursuant to sections 363, 365 or any other provision of the Bankruptcy Code or any order entered after any conversion of a chapter 11 case of the Debtors to a case under chapter 7 of the Bankruptcy Code) or any chapter 11 plan confirmed in any Debtors' bankruptcy cases or any order confirming any such plan shall nullify, alter, conflict with, or in any manner derogate from the provisions of this Sale Order, and the provisions of this Sale Order shall survive and remain in full force and effect.

56. **Failure to Specify Provisions.** The failure specifically to include any particular provisions of the Purchase Agreement or Agency Agreement in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Agreements be authorized and approved in its entirety.

## General Provisions

57. Nothing in this Sale Order shall (i) alter or affect the Debtors' obligation to comply with section 365(d)(3) of the Bankruptcy Code or (ii) alter or modify the rights of any Landlord or other counterparty to a Real Property Lease with the Debtors to file an appropriate

47

motion or otherwise seek appropriate relief if the Debtors fail to comply with section 365(d)(3) of the Bankruptcy Code.

58.     The Purchaser and the Agent are each a party-in-interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to the Agreements and the conduct of the Store Closing Sales.

59.     Notwithstanding the provisions of Bankruptcy Rule 6004 and Bankruptcy Rule 6006 or any applicable provisions of the Local Rules, this Sale Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in such rules is hereby expressly waived and shall not apply. Time is of the essence in approving the Transactions, and the Debtors and the Purchaser intend to close the Transactions as soon as practicable. Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to Closing, or risk its appeal will be foreclosed as moot.

60.     **Trimaran Agreement**.     Notwithstanding anything in this Sale Order, the Agreements, or the Ancillary Documents, subject to the execution and delivery of Ancillary Documents (which shall include for all purposes in this Sale Order, *inter alia*, the Term Sheet and the Claim Sale Agreement between the Purchaser or Ashley Stewart Holdings, Inc. and Trimaran, each dated as of October 26, 2010) and agreements in form and substance acceptable to Trimaran Capital, L.L.C., Trimaran Fund II, LLC, Trimaran Parallel Fund II, L.P., CIBC Employee Private Equity Fund (Trimaran) Partners, CIBC Capital Corporation, and Trimaran Fund Management L.L.C. (including relevant direct or indirect parent entities, subsidiaries, or affiliates, collectively, "Trimaran") and also subject to a Closing of the Transactions, in connection with the Transactions, (i) in exchange for good and valuable consideration provided

by the Purchaser in connection with the Transactions, Trimaran sold to the Purchaser all of its right, title and interest in and to, or arising under or in connection with, "Claim(s)"[3] of Trimaran against any and all of the Debtors (the "Trimaran Claims") and (ii) the Debtors sold to the Purchaser all of their right, title and interest in and to, or arising under or in connection with, Claim(s) of the Debtors against Trimaran and all of its respective current and former directors and officers, members, managers, partners, employees, advisors, attorneys, professionals, consultants, agents or other representatives (collectively, including their respective directors and officers, employees, members and professionals, (the "Trimaran Representatives") (the "Estate Trimaran Claims"). The sale of the Trimaran Claims and the Estate Trimaran Claims to the Purchaser constitutes an integral and necessary part of the Transactions and acquisition of the Assets, and the Ancillary Documents and agreements (including definitive documentation thereof) are authorized and approved, including Trimaran's and the Purchaser's execution thereof. Upon the Closing of the Transactions, the Purchaser, on behalf of itself and its assigns, successors, direct and indirect parent entities, subsidiaries and affiliates, officers, directors, employees, attorneys, shareholders, legal representatives and agents, fully, irrevocably, unconditionally, and forever releases, remises, acquits, and discharges each of Trimaran and the Trimaran Representatives of the Estate Trimaran Claims and the Debtors of the Trimaran Claim.

61.    **Jill Scott Agreement**. The Debtors may sell to New Ashley the 14,757 units of products marked or labeled as, "ASHLEY STEWART PRESENTS THE BUTTERFLY BY JILL SCOTT," "ASHLEY STEWART PRESENTS THE BUTTERFLY INSPIRED BY JILL SCOTT," "BUTTERFLY-INSPIRED BY JILL SCOTT FOR ASHLEY STEWART,"

---

[3] For purposes of this Sale Order, "Claim(s)" shall mean any and all claims (as defined herein), causes of action, suits, debts or obligations, liabilities, demands, losses, costs and expenses, or attorneys' fees of any kind, character or nature whatsoever, known or unknown, fixed or contingent, foreseen or unforeseen, asserted or assertable, or liquidated or unliquidated.

"BUTTERFLY BY JILL SCOTT," OR "BUTTERFLY BRA BY JILL SCOTT" (collectively the "Marks"), remaining as of the date of the closing of the sale (the "Closing") after accounting for sales of the products by the Debtors between October 22, 2010 and the date of the Closing (the "Final Inventory").

62.     After the Closing, the Purchaser may sell the Final Inventory (the "Authorization"), either as is or with the Marks having been removed prior to sale, through Purchaser's retail points of sale, but may not use the Marks or any JS Identity (as such term is defined in the December 1, 2007 agreement (the "JS Agreement") between Urban Brands, Inc. ("Urban") and Jill Scott and J. Heather, Inc. (together, "JS")) for any marketing or promotional purposes of any nature.

63.     The Authorization granted by this Sale Order does not constitute an assignment, conveyance, transfer, grant or license, in whole or in part, to Purchaser of any right to use any of the Marks for any purpose other than the sale of the Final Inventory.

64.     The Purchaser may not purchase, procure, obtain, order, manufacture or acquire, directly or indirectly, any additional products under or using the JS identity, the JS Marks or any Combination Marks (as defined in JS Agreement), including the Marks.

65.     The Debtors shall pay to JS, in cash in single payment, the sum of $35,000 from the proceeds of the sale immediately upon the completion of the Closing. The Debtors shall make such payment without further notice or hearing. The payment shall be delivered to the attorney trust account of Pryor Cashman LLP, as attorneys for JS.

> **Name Change.** Each Debtor is authorized and empowered to effectuate the change of its corporate names to such names as designated by the Debtors by submitting a proposed form of order under certification of counsel within three (3) business days of the entry of this Sale Order.

17690867\V-3

66.     **Closing Conditions and Termination Rights.**  Nothing in this Sale Order shall modify or waive any closing conditions or termination rights in Article 9 of the Purchase Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

67.     The Purchaser shall file with the Court a statement under oath that it has fully complied with the conditions imposed by the consumer privacy ombudsman (the "Ombudsman") to protect the personally identifiably information.  The Ombudsman shall file a supplemental report confirming such compliance.

68.     **Allocation.**  The Purchaser shall pay proceeds of the Transactions to the Debtors, collectively, to be held by Urban Brands, Inc. (as such name may be changed in compliance with the terms of this Sale Order) on behalf of all of the Debtors. The rights of all parties in interest in respect of the proper allocation of proceeds received by the Debtors on account of the Assets are reserved, as among each of the Debtors (and without impairing or affecting, in any way, the Purchaser's rights under the Agreements).

69.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

70.     To the extent, if any, anything contained in this Sale Order conflicts with a provision in the Agreements or the Sale Guidelines, this Sale Order shall govern and control.  To the extent of any conflict between the Sale Guidelines and the Agency Agreement, the Sale Guidelines shall control over the Agency Agreement; ~~provided, however, that any side letter~~ ~~entered into by and between the Agent and any Landlord shall control with respect to the conduct~~ ~~of the Store Closing Sale as to those parties.~~

71. If any parties or persons, including, but not limited to, Landlords, subtenants, utility companies, creditors and all those acting for or on their behalf, believe that cause exists to: (i) prohibit the Agent from advertising the Store Closing Sales, to the extent the same is consistent with the Agency Agreement, (ii) in any way interfere with or otherwise impede the conduct of the Store Closing Sales at the Stores or the use or maintenance of the Debtors' assets located at the Stores, or (iii) institute any action or proceeding in any court or other administrative body having as its objective the obtaining of an order or judgment against the Debtors, the Agent or a Landlord that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales and/or seek to recover damages for breach(es) of covenants or provisions in any Real Property Lease or sublease based upon any relief authorized herein, this Court shall retain exclusive jurisdiction to resolve such dispute, and such parties or persons shall take no action against the Debtors, the Agent, or the Landlord related to the Store Closing Sales until this Court has resolved such dispute. This Court shall hear the request of such persons or parties with respect to such disputes on an expedited basis, as may be appropriate under the circumstances.

72. This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order, all amendments thereto and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Purchased Assets to the Purchaser or Purchaser's designee as the case may be; (ii) interpret, implement and enforce the provisions of the Procedures Order, this Sale Order, and any related order; (iii) protect the Purchaser, its affiliates, partners, principals or shareholders against any Interests against the Debtors or the Assets of any kind or nature whatsoever, including, without limitation, through

17690865\V-3

the grant of declaratory and injunctive relief determining that the Purchaser, its affiliates, partners, principals or shareholders and their assets (including the Assets) are not subject to such Interests and prohibiting persons and entities from asserting such Interests against the Purchaser, its affiliates, partners, principals or shareholders and their assets (including the Assets); and (iv) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Contracts and the Real Property Leases.

Dated:  October 11, 2010
        Wilmington, Delaware

THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE