IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UBI Liquidating Corp., et al.,[1] | ) | Case No. 10-13005 (KJC) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Re: Docket No. 1384 |

## ORDER CONFIRMING THE JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

UBI Liquidating Corp. and its affiliated debtors and debtors in possession (each, a "Debtor" and collectively, the "Debtors") having filed the *Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code*, dated July 20, 2011 [Docket No. 1384] (together with all exhibits attached thereto and the Plan Supplement filed on September 30, 2011 [Docket No. 1413], the "Plan"),[2] attached hereto as Exhibit A; and the United States Bankruptcy Court for the

---

[1] The Debtors in these cases, along with the last four digits of the federal tax identification number for each of the Debtors, are UBI Liquidating Corp. (3678), 100% Girls Ltd. (4150), 100% Girls of Georgia, Inc. (4159), 100% Girls of New York, Inc. (2149), 100 Percent Girls of New Jersey, Inc. (4167), A.S. Interactive, Inc. (3472), ASL Liquidating Corp. (4541), Ashley Stewart Apparel Corporation (4049), Ashley Stewart Clothing Company, Inc. (4051), ASMCI Liquidating Corp. (4053), ASWL Liquidating Corp. (4152), ASIL 6, Inc. (3996), ASNJ 10, Inc. (4004), Carraizo Alto Apparel Corporation (4651), Church Street Retail, Inc. (5954), Kid Spot Ltd. (2585), Kidspot of Delaware, Inc. (2596), Kidspot of Illinois, Inc. (2606), Kidspot of Michigan, Inc. (2603), Kidspot of New Jersey, Inc. (2601), Kidspot of Ohio, Inc. (4705), Kidspot of Pennsylvania, Inc. (2599), Kidspot of Texas, Inc. (3809), Large Apparel of Alabama, Inc. (0624), Large Apparel of California, Inc. (2129), Large Apparel of Connecticut, Inc. (5161), Large Apparel of District of Columbia, Inc. (8613), Large Apparel of Florida, Inc. (2209), Large Apparel of Georgia, Inc. (3894), Large Apparel of Illinois, Inc. (4650), Large Apparel of Indiana, Inc. (4055), Large Apparel of Louisiana, Inc. (3790), Large Apparel of Maryland, Inc. (5158), Large Apparel of Michigan, Inc. (9420), Large Apparel of Mississippi, Inc. (5913), Large Apparel of Missouri, Inc. (2135), Large Apparel of New Jersey, Inc. (5157), Large Apparel of New York, Inc. (5956), Large Apparel of North Carolina, Inc. (8611), Large Apparel of Ohio, Inc. (3815), Large Apparel of Pennsylvania, Inc. (4057), Large Apparel of South Carolina, Inc. (2029), Large Apparel of Tennessee, Inc. (3895), Large Apparel of Texas, Inc. (3787), Large Apparel of Virginia, Inc. (2809), Large Apparel of Wisconsin, Inc. (3898), Marianne Ltd. (3940), Marianne USPR, Inc. (2193), Marianne VI, Inc. (2206), Metro Apparel of Kentucky, Inc. (7533), Metro Apparel of Massachusetts, Inc. (1367), The Essence of Body & Soul, Ltd. (4165), UACONJI Liquidating Corp. (2976), UACONYI Liquidating Corp. (4103), and UBTHC Liquidating Corp. (5909). The Debtors' corporate offices are located at 100 Metro Way, Secaucus, New Jersey 07094.

[2] All capitalized terms used in this Confirmation Order but not defined herein shall have the meaning ascribed to such terms in the Plan. All capitalized terms used in this Confirmation Order or in the Plan that are not defined in this Confirmation Order or in the Plan shall have the meaning ascribed to such terms in 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), as applicable.

District of Delaware (the "Court") having conducted a hearing to consider confirmation of the Plan on October 19, 2011 (the "Hearing"); and the Court having considered (i) the *Declaration of Stephen Feldman in Support of Confirmation of Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [Docket No. 1437], dated October 17, 2011, (ii) the *Declaration of BMC Group, Inc. Regarding Tabulation of Votes in Connection with the Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [Docket No. 1439], dated October 17, 2011, tabulating the results of the balloting, (iii) any exhibits admitted into evidence at the Hearing, (iv) the arguments of counsel presented at the Hearing; and (v) any objections filed with respect to the confirmation of the Plan that were not withdrawn or otherwise resolved prior to or at the Hearing; and the Court being familiar with the Plan and any other relevant factors affecting the above-captioned jointly administered chapter 11 cases (the "Chapter 11 Cases"); and the Court having taken judicial notice of the entire record of the Chapter 11 Cases, including, without limitation, the docket in the Chapter 11 Cases maintained by the clerk of the Court and/or its duly appointed agent, including, without limitation, all pleadings, notices and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Court during these Chapter 11 Cases and the *Order (A) Approving Form and Manner of Notice of Disclosure Statement Hearing, (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Proposed Chapter 11 Plan, (C) Scheduling a Hearing on Confirmation of Proposed Chapter 11 Plan and Approving related Notice Procedures, and (D) Extending the Debtors' Exclusive Solicitation Period Through and Including October 31, 2011* [Docket No. 1378], dated September 7, 2011 (the "Voting Procedures Order"); and the Debtors, in accordance with the Voting Procedures Order, having caused to be mailed by U.S. first class mail (i) Solicitation Packages (as such term is defined in

the Voting Procedures Order) containing copies of: (a) the Confirmation Hearing Notice, (b) the Disclosure Statement (together with the exhibits thereto, including the Plan, that have been filed with the Court before the date of the mailing) on a compact disc in PDF format, and (c) an appropriate form of ballot (the "Ballots") and a ballot return envelope, to holders of Claims entitled to vote to accept or reject the Plan in paper format; (ii) the applicable Notice of Non-Voting Status and the Confirmation Hearing Notice to holders of Class 1 Bank of America Secured Lender Claims, Class 2 Other Secured Claims, Class 3 Priority Non-Tax Claims, and Class 5 Equity Interests; (iii) the Confirmation Hearing Notice to all creditors, equity security holders and other parties in interest; and (iv) Solicitation Packages for other parties entitled to notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002, including the Confirmation Hearing Notice and the Disclosure Statement; and the Court having found that this constitutes due and proper notice in accordance with the procedures set forth in the Voting Procedures Order; and after due deliberations and sufficient cause appearing therefor;

IT IS HEREBY FOUND, ORDERED, ADJUDGED AND DECREED AS FOLLOWS:[3]

1. The record of the Hearing is now closed.

2. The Court has jurisdiction to conduct the Hearing and to confirm the Plan pursuant to 28 U.S.C. § 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court has jurisdiction and authority to enter a final order with respect thereto.

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, when appropriate. See Bankruptcy Rule 7052 and 9014.

4. The Debtors have complied with the Voting Procedures Order. The Plan has been proposed in good faith and not by any means forbidden by law.

5. All persons required to receive notice have received proper, timely and adequate notice in accordance with the Voting Procedures Order and have had an opportunity to appear and be heard with respect thereto. Such proper notice is due under the Bankruptcy Code and the Bankruptcy Rules.

6. The Debtors have solicited and tabulated the votes with respect to confirmation of the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Voting Procedures Order, and have met all requirements for confirmation of the Plan.

7. The Plan, subject to any express modifications contained in this Confirmation Order, is hereby APPROVED and CONFIRMED under section 1129 of the Bankruptcy Code, and the relief requested in the Plan, subject to any express modifications contained in this Confirmation Order, is GRANTED. The terms and provisions of the Plan are expressly incorporated into and are an integral part of this Confirmation Order. Each term and provision of the Plan is valid, binding and enforceable as though set forth herein. The failure specifically to include or reference any particular term or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such term or provision, it being the intent of the Court that the Plan be confirmed in its entirety. Notwithstanding the foregoing, if there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

8. The Plan constitutes a motion to reject all executory contracts and unexpired leases to which any of the Debtors are a party except for any executory contract or

unexpired lease (a) that has been assumed or rejected pursuant to an order of the Court entered prior to the Confirmation Date, or (b) as to which a motion for approval of the assumption of such contract or lease has been filed and served prior to the Confirmation Date (collectively, the "Executory Contracts"). The Court finds that it is the exercise of the Debtors' reasonable business judgment to reject each of the Executory Contracts. As of the Effective Date, each Executory Contract that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code. No Executory Contracts are being assumed by the entry of this Confirmation Order. Any claim resulting from a rejection of an Executory Contract under the Plan must be filed in accordance with Article VII of the Plan within thirty (30) days of the Effective Date. Any claimant not filing such claim within such time period shall not be treated as a creditor for purposes of distribution pursuant to Bankruptcy Rule 3003(c)(2).

9. The Court finds that the Plan satisfies all of the elements required by section 1129 of the Bankruptcy Code. To the extent that any Class was impaired under the Plan and did not vote to accept the Plan, the Court finds that the Debtors have satisfied the "cramdown" requirements of sections 1122, 1123 and 1129(b) of the Bankruptcy Code with respect to such Class.

10. Any reservations of rights and/or objections to confirmation of the Plan that have not been withdrawn prior to the entry of this Confirmation Order are hereby overruled in their entirety, and any withdrawn reservations of rights and/or objections are hereby deemed withdrawn with prejudice.

11. Upon the occurrence of the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors, and their respective

successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holders voted to accept or reject the Plan.

12. The classifications of Claims for distributions shall be governed by the Plan and this Confirmation Order. Classifications set forth in the form of Ballot were solely for voting purposes and do not affect Plan classifications or modify or affect classifications for distributions and thus do not bind the Debtors or the Liquidating Trustee.

13. Except as expressly set forth herein or in the Plan, on and after the Confirmation Date, subject to the occurrence of the Effective Date, all Parties and Entities are permanently enjoined on account of any Claim or Equity Interest, from: (a) commencing or continuing in any manner any action or other proceeding of any kind against any of the Debtors' Estates, the UBI Liquidating Trust, their successors and assigns, and any of their assets and properties; (b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Debtor's Estate, the UBI Liquidating Trust, their successors and assigns, and any of their assets and properties; (c) creating, perfecting or enforcing any encumbrance of any kind against any Debtor's Estate, the UBI Liquidating Trust, their successors and assigns, and any of their assets and properties; (d) asserting any right of setoff or subrogation of any kind regarding any obligation due to a Debtor's Estate, the UBI Liquidating Trust or their successors and assigns, or against any of their assets and properties, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed proof of claim; or (e) commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled under the Plan.

14. The release provisions provided for in Article IX.B, Article IX.D and Article IX.F of the Plan are hereby APPROVED.

15. The exculpation provisions provided for in Article IX.C of the Plan are hereby APPROVED.

16. The Texas Comptroller of Public Accounts (the "Texas Comptroller") and the Texas Workforce Commission's ("TWC") limited objection is resolved as follows:

   a. Priority and Administrative Expense Claims of the Texas Comptroller for Sales and Use Taxes. The Texas Comptroller of Public Accounts (the "Texas Comptroller") has filed priority tax Claim No. 765 in the amount of $111,277.20 (the "TC Priority Tax Claim") and an administrative expense Claim No. 764 in the amount of $3,168.05 (the "TC Administrative Expense Claim"). To the extent the TC Priority Tax Claim and the TC Administrative Expense Claim become Allowed Claims prior to the Effective Date, the TC Priority Tax Claim and TC Administrative Expense Claim shall be paid within ten (10) Business Days after the Effective Date. In the event that the TC Priority Tax Claim and TC Administrative Expense Claim are not paid within ten (10) Business Days after the Effective Date, the Texas Comptroller shall be entitled to post-Effective Date interest on the Allowed amount of each Claim at the rate of 4.25% per annum until such Claim is paid.

   b. Administrative Expense Claim of the Texas Comptroller for Franchise Tax. The Texas Comptroller is holding a pre-payment in the amount of $30,000 (the "Debtors' Prepayment") pending Debtors' filing of their 2011 franchise tax return (the "2011 Return"). Notwithstanding anything herein or in the Plan to the contrary, to the extent that the 2011 Return indicates liability greater than that estimated and paid by the Debtors' Prepayment, the Debtors or the Liquidating Trustee shall pay the amount reflected as owing on the 2011 Return in excess of the Debtors' Prepayment, plus any interest accruing under state law within ten (10) business days of such liability becoming an Allowed Claim. If the 2011 Return indicates total liability less than Debtors' Prepayment, the Texas Comptroller shall refund the excess to the Liquidating Trustee within forty-five (45) business days after the 2011 Return is received by the Texas Comptroller. The Debtors and the Liquidating Trustee reserve the right to challenge, dispute or object to any determination by Texas Comptroller of the Debtors' 2011 franchise tax liability, including any administrative expense Claim filed by the Texas Comptroller.

   c. TWC Administrative Expense Claims. The TWC filed administrative expense Claims No. 798 & 799 in the amounts of $767.24 and $196.16, respectively (the "TWC Administrative Expense Claims"). To the extent the TWC Administrative

Expense Claims become Allowed Claims prior to the Effective Date, the TWC Administrative Expense Claims shall be paid within ten (10) Business Days after the Effective Date. In the event that the TWC Administrative Expense Claims are not paid within ten (10) Business Days after the Effective Date, the TWC shall be entitled to post-Effective Date interest accruing under state law on the Allowed amount of each Claim until such Claim is paid.

17. The limited objection of Dallas County, Harris County, Jefferson County and Tarrant County (collectively, the "Texas Taxing Authorities") to the Plan is resolved as follows:

   a. <u>The Texas Taxing Authorities Claims</u>. The Texas Taxing Authorities shall be entitled to postpetition interest on the Allowed amount of their Claims at the statutory rate of 12% per annum, from the petition date continuing until such time as their Allowed Claims are paid in full.

18. Upon the Effective Date, all settlements and compromises that are embodied in the Plan, and all settlements and compromises approved by order of the Court during the pendency of the Chapter 11 Cases, are hereby approved or reaffirmed, as applicable, as fair, equitable, reasonable and in the best interests of the Debtors and their Estates, creditors and holders of Claims and Equity Interests, and such settlements and compromises shall be, and hereby are, effective and binding on all persons and entities. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), upon the Effective Date (i) the settlements, compromises, exculpations, releases and injunctions set forth in the Plan and implemented by this Confirmation Order shall be, and hereby are, approved as equitable, reasonable and in the best interests of the Debtors and their Estates, their creditors and holders of Claims and Equity Interests; (ii) the classification and manner of satisfying all Claims and Equity Interests and the respective distributions and treatments under the Plan take into account and/or conform to the relative priority rights of the Claims and Equity Interests in each Class in connection with any contractual, legal and equitable rights relating thereto and are proper under section 1122 of the

Bankruptcy Code; and (iii) the settlement, compromise and release of any and all such rights pursuant to the Plan are in the best interests of the Debtors and their Estates, their creditors and the holders of Claims and Equity Interests in these Chapter 11 Cases, and shall be, and hereby are, approved as fair, equitable and reasonable.

19. In accordance with section 1141 of the Bankruptcy Code and Article IX.G of the Plan, and pursuant to sections 105(a), 1123(a)(5)(B) and 1123(a)(5)(C) of the Bankruptcy Code, effective as of the Effective Date, all of the Debtors' assets and liabilities, including Claims, shall be substantively consolidated for all purposes associated with confirmation and consummation of the Plan. Accordingly, for purposes of classification, voting and distributions under the Plan, (i) all assets and liabilities, including Claims, of the Debtors shall be merged and certain of the Debtors' assets (for the avoidance of doubt, other than the Transferred Causes of Action and the Causes of Action against Trimaran) and liabilities shall be transferred to and vested in the UBI Liquidating Trust so that all such transferred assets shall be available to pay all of the Allowed Claims of all of the Debtors as if they were one company; (ii) any obligation of any of the Debtors and all guaranties thereof by or enforceable against any of the Debtors and any joint and several liability of the Debtors shall be treated as though they were a single obligation in the amount of the obligation of the primary obligor; (iii) any Claim or Claims filed or to be filed against any of the Debtors in connection with any such obligation and any such guaranties or any such joint and several liability shall be treated as though they were a single Claim in the amount of the Claim against the primary obligor; (iv) all such guaranties shall be deemed eliminated and extinguished; (v) all Claims of any Debtor against any other Debtor shall be cancelled and extinguished; and (vi) no distributions shall be made under the Plan on account of any interests of any of the Debtors in any of the other Debtors.

RLF1 5446005v. 4

20. In accordance with section 1142 of the Bankruptcy Code, upon the entry of this Confirmation Order, the Debtors, the UBI Liquidating Trust, and the Liquidating Trustee acting by and through their respective officers and agents, hereby are authorized to take any and all actions necessary or appropriate to implement the Plan, including, without limitation, forming the UBI Liquidating Trust and entering into the Liquidating Trust Agreement (substantially in the form included in the Plan Supplement), without any further order of the Court.

21. As set forth in Article IV of the Plan, from and after the Effective Date, the UBI Liquidating Trust and the Liquidating Trustee, subject to any required approval of the Liquidating Trust Committee as set forth in Article IV.A.1 of the Plan and the Liquidating Trust Agreement, may litigate or settle any Retained Causes of Action, Disputed Claims, and rights to payment or claims that belong to the Debtors (for the avoidance of doubt, other than the Transferred Causes of Action and Causes of Action against Trimaran) that may be pending on the Effective Date or instituted by the Liquidating Trustee after the Effective Date. Notwithstanding any state or federal law to the contrary or anything herein, the UBI Liquidating Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued, and may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other proceedings brought by or against it, and may settle and compromise all such matters in its own name. Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the UBI Liquidating Trust shall be empowered to pursue such Retained Causes of Action, and no other person or entity may pursue such Retained Causes of Action.

22. Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer in connection with

the Plan shall not be taxed under any law imposing a stamp tax or similar tax. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded are hereby ordered and directed to accept such instrument, without requiring the payment of any stamp tax or similar tax.

23. In accordance with section 1142 of the Bankruptcy Code, the Debtors, the UBI Liquidating Trust, and the Liquidating Trustee and any other entity designated pursuant to the Plan are hereby authorized, empowered and directed to issue, execute, deliver, file and record any document, and to take any action necessary or appropriate to implement, consummate and otherwise effectuate the Plan in accordance with its terms, including, but not limited to, the Liquidating Trust Agreement, and all such entities shall be bound by the terms and provisions of all such documents issued, executed and delivered by them as necessary or appropriate to implement and/or effectuate the transactions contemplated by the Plan.

24. The claims register for these Chapter 11 Cases shall be deemed closed as of the Record Date. The Debtors, the UBI Liquidating Trust, the Liquidating Trustee and any disbursing agent retained by any of them shall have no obligation to recognize the transfer or sale of any Claim that occurs after the close of business on the Record Date and shall be entitled for all purposes herein to recognize and make Distributions only to those holders of Claims who are holders of such Claims as of the close of business on the Record Date.

25. The Court finds that formation of the Liquidating Trust is an essential element of the Plan, and entry of the Liquidating Trust Agreement provided in the Plan Supplement is in the reasonable exercise of the Debtors' business judgment. The entry by the Debtors in the Liquidating Trust Agreement is APPROVED and shall not be in conflict with any

federal or state law. The appointment of Stephen A. Feldman as Liquidating Trustee is APPROVED.

26. Notwithstanding anything in the Plan to the contrary (including, without limitation, anything in Article IV.A of the Plan), the Liquidating Trust Committee shall be comprised of those members of the Creditors' Committee willing to serve in such capacity. Notwithstanding anything in the Plan to the contrary, the Debtors and the Creditors' Committee together shall determine the initial members of the Liquidating Trust Committee prior to the Effective Date and shall file a notice with the Bankruptcy Court setting forth the initial members of the Liquidating Trust Committee.

27. On the Effective Date, the UBI Liquidating Trust shall be transferred and vested with the Liquidating Trust Fund, including all Cash and all of the assets remaining in the Estates on the Effective Date (for the avoidance of doubt, the Transferred Causes of Action and Causes of Action against Trimaran are not assets of the Estates and shall not be transferred to the UBI Liquidating Trust), including, without limitation, the right to prosecute, settle, withdraw or resolve the Retained Causes of Action in any manner approved by the Court.

28. Pursuant to Article IV.C of the Plan and the Liquidating Trust Agreement, the Liquidating Trustee can retain and pay professionals (including any of the Debtors' or the Creditors' Committee's professionals) or other persons on behalf of the UBI Liquidating Trust and the Liquidating Trust Committee to assist the Liquidating Trustee in the liquidation of the Liquidating Trust Fund on behalf of the UBI Liquidating Trust, without prior Court approval, and to designate another person to be the disbursing agent. The Court retains jurisdiction to adjudicate any dispute concerning the payment of any fees or expenses by the UBI Liquidating Trust.

29. The Court retains jurisdiction over the Debtors, their Estates and the Plan to the fullest extent permitted by applicable law and Article X of the Plan.

30. The reasonable and necessary professional fees and expenses incurred by the Debtors, the Liquidating Trustee on behalf of the UBI Liquidating Trust and the Creditors' Committee from and after the Effective Date in connection with the consummation and implementation of the Plan (including the reasonable and necessary fees and expenses of the Debtors and the Creditors' Committee with respect to the preparation and prosecution of final fee applications as contemplated by Article XI.A of the Plan) shall be paid by the UBI Liquidating Trust in the ordinary course of business without further order of the Court; provided, however, that the Court shall retain jurisdiction over all such parties in the event of any dispute over the amount of such fees and expenses.

31. In addition to the rights and duties of the Liquidating Trustee enumerated in the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall have the right to move the Court for the entry of examination orders under Bankruptcy Rule 2004 on behalf of the UBI Liquidating Trust and/or the Estates as deemed necessary by the Liquidating Trustee, and the Court specifically retains jurisdiction to consider and determine any such motion. The form of the Liquidating Trust Agreement, as the same may be subsequently amended or modified in accordance with its terms, is APPROVED The Liquidating Trust Agreement is legal, valid, binding, enforceable and authorized in accordance with its terms, and the UBI Liquidating Trust and the Liquidating Trustee shall have all of the rights and powers set forth in that agreement.

32. All of the modifications to the Plan contained in this Confirmation Order are non-material and are consistent with sections 1122, 1123 and 1127(a) of the Bankruptcy Code. Pursuant to Bankruptcy Rule 3019, this Court finds that the modifications to the Plan

contained in this Confirmation Order do not adversely change the treatment of the Claim of any creditor or the interest of any interest holder who has not accepted the Plan in writing, and such modifications are hereby deemed accepted by all creditors and interest holders who have previously accepted the Plan.

33. After the entry of this Confirmation Order and prior to "substantial consummation" (as such term is defined in section 1101(2) of the Bankruptcy Code) of the Plan, any Debtor, the UBI Liquidating Trust or the Liquidating Trustee may institute proceedings in the Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any effect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or this Confirmation Order, and such matters as may be necessary to carry out the purposes and the effects of the Plan, by the filing of a motion on notice to the Bankruptcy Rule 2002 service list only, and the solicitation of all other creditors and parties-in-interest shall not be required.

34. Nothing in the Plan or this Confirmation Order is intended to modify or violate 28 U.S.C. § 157(d).

35. Substantial consummation of the Plan shall be deemed to occur on the Effective Date. Further, Bankruptcy Rule 3020(e) shall not apply to this Confirmation Order, and the Debtors are authorized to consummate the Plan immediately upon entry of this Confirmation Order.

36. The reversal, vacatur or modification of this Confirmation Order shall not affect the validity of the acts or obligations incurred or undertaken in connection with the Plan or this Confirmation Order prior to the entry of such order reversing, vacating or modifying this Confirmation Order. Any act or obligation undertaken or incurred prior to a reversal, vacatur or

modification of this Confirmation Order shall be governed by the Plan and this Confirmation Order.

37. This Confirmation Order is a final order, and the period in which an appeal must be filed shall commence upon the entry hereof.

Dated: October 19, 2011
      Wilmington, Delaware

_____
THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

RLF1 5446005v. 4